## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JENNIFER MONILAW and SHANNYN BURZESE, On behalf of themselves and all others similarly situated, | Case No |
| *Plaintiffs*, | Jury Trial Demanded |
| v. | |
| MERCEDES BENZ GROUP AG (f.k.a. DAIMLER AG) and MERCEDES BENZ USA, LLC, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................5

    MERCEDES' KNOWLEDGE AND ACTIVE CONCEALMENT OF THE DEFECT
        (SUMMARY OF MERCEDES' BAD ACTS)...........................................6

**PARTIES**............................................................................................7

**JURISDICTION AND VENUE**............................................................10

**FACTS**..............................................................................................12

  A.  GENERAL FACTS..................................................................12

  B.  PLAINTIFF MONILAW'S FACTS..........................................18

  C.  PLAINTIFF BURZESE'S FACTS.............................................22

  D.  THE INTENDED AND ORDINARY PURPOSE OF A MERCEDES VEHICLE........26

  E.  MERCEDES' MARKETING AND CONCEALMENT.........................27

      1.  Mercedes Knew Or Should Have Known Of The Interior Veneer
           Wood Trim Defect Prior To Sale Or Lease Of The Putative Class
           Vehicles...........................................................................32

      2.  Mercedes Knew Or Should Have Known Of The Veneer Wood
           Trim Defect From Class Member Complaints Made Directly To
           Mercedes..........................................................................40

      3.  Mercedes Knew Or Should Have Known Of Veneer Wood Trim
           Defect From Repair Data.....................................................41

      4.  Mercedes Knew Or Should Have Known Of The Veneer Wood
           Trim Defect Based On Putative Class Member Complaints On
           Public Online Forums. ........................................................42

  F.  DEFENDANTS' INADEQUATE REMEDY.................................44

  G.  PLAINTIFFS AND PUTATIVE CLASS MEMBERS WERE DAMAGED BY THE
      VENEER WOOD TRIM DEFECT..............................................44

  H.  FRAUDULENT CONCEALMENT FACTS DETAILED.......................49

      1.  Defendants' Duty To Disclose The Known Defect.........................51

2.    Who, What, When, Where, How, And Why of Fraudulent
      Concealment.........................................................................52

CLASS ACTION ALLEGATIONS .................................................56

CAUSES OF ACTION ....................................................................61

   COUNT ONE Breach Of Implied Warranty ..............................61

   (By All Plaintiffs On Behalf of All Putative Classes) ......................61

   COUNT TWO Equitable And Injunctive Relief .......................64

   (By All Plaintiffs On Behalf Of All Putative Classes).......................64

   COUNT THREE Violation Of The Magnuson-Moss Warranty Act, 15
      U.S.C. §§ 2301, ET SEQ. ......................................................66

   (By All Plaintiffs On Behalf Of All Putative Classes).......................66

   COUNT FOUR Unjust Enrichment ...........................................69

   (By All Plaintiffs On Behalf Of All Putative Classes).......................69

   COUNT FIVE Fraud And Suppression Claim..............................70

   (By All Plaintiffs On Behalf Of All Putative Subclasses).................70

   COUNT SIX Violation Of Georgia's Fair Business Practices Act  (By
      All Plaintiffs On Behalf Of The Putative Nationwide Class) ....76

   COUNT SEVEN Violation Of Georgia's Uniform Deceptive Trade
      Practices Act  (By All Plaintiffs On Behalf Of The Putative
      Nationwide Class) .............................................................81

   COUNT EIGHT Violation Of The Pennsylvania Unfair Trade
      Practices And Consumer Protection Law ("Pennsylvania
      UTPCPL")  (By Plaintiff Burzese On Behalf Of The Putative
      Pennsylvania Subclass).....................................................87

   COUNT NINE Violation of the Illinois Consumer Fraud and
      Deceptive Trade Practices Act, 815 ILCS § 505/1, et seq. (By
      Plaintiff Monilaw On Behalf Of the Putative Illinois Subclass)
      ...........................................................................................92

   COUNT TEN Violation of the Illinois Uniform Deceptive Trade
      Practices Act..........................................................................95

**815 ILL. COMP. STAT. § 510/2, *ET SEQ.* (BY PLAINTIFF MONILAW ON BEHALF OF THE PUTATIVE ILLINOIS SUBCLASS)** .......................................................95

**PRAYER FOR RELIEF** .......................................................................98

**DEMAND FOR JURY TRIAL** .......................................................98

**INTRODUCTION**

1.      Plaintiffs Jennifer Monilaw and Shannyn Burzese (collectively, "Plaintiffs") bring this putative class action complaint against Defendants Mercedes Benz Group AG (f.k.a. Daimler AG) and Mercedes Benz USA, LLC.

2.      Plaintiffs bring this action individually and on behalf of all others similarly situated and allege upon personal knowledge, information, and belief that Defendants Mercedes Benz Group AG, formerly known as Daimler AG, ("MBG" or "Daimler"), and Mercedes Benz USA, LLC ("MBUSA" and, collectively with MBG, "Mercedes" or "Defendants") are liable to them and the Putative Classes under federal and state law for defective materials, workmanship, engineering, manufacturing, development, marketing, and sale of vehicles with defective interior veneer wood finish trim (hereafter the "Veneer Wood Trim").

3.      The vehicles at issue in this litigation include, but may not be limited to the Mercedes ML, GL, GLE, GLS, GLC, GLK models with model years 2013 through 2022 equipped with Mercedes' Veneer Wood Trim ("Putative Class Vehicles").[1]

4.      This action is brought to remedy violations of law in connection with

---

[1]  Discovery will enable Plaintiffs to more precisely determine which model-years share the same uniform (and uniformly defective) Veneer Wood Trim, but upon information and belief, this list includes all affected models and model years.

Defendants' materials, workmanship, engineering, manufacturing, development, marketing, testing, durability, advertising, selling, warranting, and servicing of the Putative Class Vehicles.   The Putative Class Vehicles were all equipped by Mercedes with their Veneer Wood Trim, which has a serious latent defect that causes the Veneer Wood Trim to crack. Notably, Mercedes cars and SUVs of similar ages to Plaintiffs' vehicles, and which utilized other available trims, are not known to have similar issues.

### MERCEDES' KNOWLEDGE AND ACTIVE CONCEALMENT OF THE DEFECT (SUMMARY OF MERCEDES' BAD ACTS)

5.     Mercedes knew or should have known, prior to Plaintiffs' purchases that the Veneer Wood Trim itself was defective and would lead to the problems Plaintiffs and Putative Class Members are experiencing.

6.     Mercedes breached their implied warranties by continuing to sell the defective Putative Class Vehicles and refusing to remedy the issues; instead, Mercedes actively concealed the defects from Plaintiffs and the Putative Class Members.

7.     Mercedes was also unjustly enriched at Plaintiffs' expense by continuing to profit from sale of goods with a known defect.   By fraudulently suppressing their knowledge of the issues with the Veneer Wood Trim on Putative Class Vehicles, Mercedes violated various state consumer protection laws, as set

forth herein.

## **PARTIES**

8.      Plaintiff Jennifer Monilaw ("Plaintiff Monilaw or "Ms. Monilaw") is an adult resident and citizen of Crystal Lake, Illinois.

9.      Plaintiff Shannyn Burzese ("Plaintiff Burzese" or "Ms. Burzese") is an adult resident and citizen of Pittsburgh, Pennsylvania.

10.      Daimler was a German corporation with its principal place of business in Stuttgart, Germany.

11.      Defendant MBG is a German corporation with its principal place of business in Stuttgart, Germany.

12.      In early 2022, Daimler was rebranded as MBG and officially changed its registered company name to Mercedes Benz Group AG.   For all relevant purposes, Daimler and MBG are one in the same.  References to Daimler herein shall be understood to also reference MBG and vice versa.

13.      Defendant MBUSA is a Delaware corporation with its principal place of business in Atlanta, Georgia.   It is therefore a citizen of both Delaware and Georgia.

14.      MBUSA is a wholly owned subsidiary of MBG.

15.      At all times relevant herein, MBUSA has been and has acted as an agent

of Daimler/MBG and was and is subject to Daimler/MBG's control.

16.    Mercedes engineered, manufactured, developed, marketed, distributed, sold, leased, and warranted the Putative Class Vehicles. Mercedes also developed and disseminated the manuals, warranty booklets, advertisements, and promotional materials relevant hereto.

17.    At all times relevant herein, MBG (itself and through its related entities) engaged in the business of engineering, developing, and manufacturing the Putative Class Vehicles.

18.    Upon information and belief, MBG maintained final decision-making control over materials, workmanship, engineering, manufacturing, and development of the Putative Class Vehicles, including their defective interior surfaces, and therefore is an essential party to this action concerning a defect in the Putative Class Vehicles' Veneer Wood Trim.

19.    Upon information and belief, MBG has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the materials, workmanship, engineering, manufacturing, and development of Putative Class Vehicles, the manner of Putative Class Vehicles' marketing and advertisement, and representations made and facts withheld from consumers and the public about the

Veneer Wood Trim Defect.

20.    Upon information and belief, MBG has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Putative Class Member inquiries regarding the Defective Veneer Wood Trim.

21.    MBG has held MBUSA out as its agent for all purposes in the United States, especially for sales and marketing of Putative Class Vehicles and for ongoing management of relationships with purchasers and lessees of Putative Class Vehicles.

22.    MBG established MBUSA as its wholly-owned subsidiary company and ensured consumers would connect the companies through shared use of the official "Mercedes Benz" name and trademarks. It provided MBUSA with marketing and technical materials intentionally avoiding any distinction between MBUSA and MBG. MBG officially and publicly held out MBUSA as MBG's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

23.    Because of the foregoing actions, representations, and omissions by MBG  and MBUSA regarding the Putative Class Vehicles, Plaintiffs were injured because of their purchase or lease of defective Putative Class Vehicles.

## JURISDICTION AND VENUE

24.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 Putative Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

25.    This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in this District, has its principal place of business in this District, is at home in this District, and some of the actions giving rise to the complaint took place in this District.  Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of general personal jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

26.    This Court has personal jurisdiction over MBG because MBG has continuous and systematic general business contacts in this District.

27.    By headquartering its wholly owned subsidiary MBUSA in this District, and by using MBUSA as its sole avenue for marketing, distributing, warranting, selling and leasing the MBG-engineered, manufactured, and developed Putative Class Vehicles in this District and the United States, MBG has deliberately

taken affirmative steps to make MBG-engineered, manufactured, and developed Putative Class Vehicles available to consumers in this District and the rest of Georgia, including Putative Class Members; created continuing obligations between MBG and residents of this District; and purposefully availed itself of the benefits and protections of conducting business in this District.

28.    MBG employees and representatives conduct business and oversee operations at MBUSA's headquarters in this District, thereby continuously conducting business in this District.

29.    Further, MBG's wholly owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to MBG.

30.    Further, MBUSA is an agent of MBG, and by MBUSA acting as MBG's agent, such contacts by MBUSA are imputed to MBG.

31.    The foregoing allegations, when taken together, are sufficient to render the exercise of general personal jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

32.    Venue is proper in this District under 28 U.S.C. § 1391(b) & (c) because Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

33.    Additionally, Defendants transact business within the District, MBUSA

has its principal place of business in this District, and some of the events establishing the claims occurred in this District.

## FACTS

### A. GENERAL FACTS

34.    Each Putative Class Vehicle is a luxury vehicle that comes with a relatively high price tag in exchange for a vehicle that is superior to others in quality, looks, drivability, fit, and finish. Plaintiffs and the Putative Class Members sought out the Putative Class Vehicles and purchased the Putative Class Vehicles intentionally after seeing and relying on Mercedes ads. The choice of Mercedes vehicles with the Veneer Wood Trim interior was no mistake—when the Veneer Wood Trim is in the condition in which it is sold and should remain, it has a unique interior fit and finish that gives the cars a luxurious look. Indeed, the Veneer Wood Trim is an extremely common interior used in Mercedes-brand vehicles, and it is a trim that is widely associated with the Mercedes brand and is central to Mercedes' branding.

35.    The condition of the interior trim on the Putative Class Vehicles is an important aspect of their overall value, is considered by first purchasers as well as secondary purchasers, and is a factor that determines whether a car will sell at fair market value or not. The Veneer Wood Trim has been a favorite interior of

Defendants for decades due to its resilient and durable nature and rich visual appearance. The Veneer Wood Trim in the Putative Class Vehicles fails to adhere to Defendants' own standards and is neither resilient nor durable.

36.    The defects in the Veneer Wood Trim have affected the resale and buyback value of the Putative Class Vehicles. Defendants recognize this when they advertise the quality of their interior finishes and trim and when they offer lower values for buybacks and secondary purchases of cars with interior and trim problems such as the cracked Veneer Wood Trim on the Putative Class Vehicles.

37.    Defendants knew or should have known, prior to marketing and selling the Putative Class Vehicles to Plaintiffs and the Putative Class Members, that the Veneer Wood Trim interior was susceptible to cracking. Yet, Defendants continued to sell the Putative Class Vehicles with the hope that Putative Class Members would not notice their cracking Veneer Wood Trim within the applicable warranty period.

38.    Notwithstanding this long-standing problem and extensive knowledge of the issue prior to Plaintiffs' purchases, Defendants continued to advertise and sell the defective vehicles and failed to replace the Veneer Wood Trim with non-defective trim even in new models. Defendants knowingly failed to provide truthful information about the defects present in the interior Veneer Wood Trim to consumers.

39.    Defendants benefitted from each of Plaintiffs' and the Putative Class Members' purchases of their Putative Class Vehicles. Each purchase of a Putative Class Vehicle provided either direct or indirect revenue to Defendants, through either a direct purchase through an authorized dealer of new, CPO, or other used cars or through increasing original sale prices by perpetuating a strong market for used Mercedes vehicles.

40.    Defendants received direct revenue from the sale of new and/or Certified Pre-Owned ("CPO") vehicles to Putative Class Members. A CPO vehicle is a used car that Defendants have represented that they inspected to ensure maintained "Mercedes" quality, the purchase of which comes with a warranty from Defendants.  The extended warranty would normally be unavailable on used cars and allows Defendants to sell CPO vehicles for higher prices, increasing revenue. Thus, purchasers of CPO vehicles, including some Putative Class Members, provide a direct financial benefit to Defendants.

41.    For each Putative Class Vehicle, Defendants issued an express warranty which covered the vehicle, including but not limited to, the Interior Veneer Wood Trim, warranting it to be free of defects in materials and workmanship at the time of purchase or lease.

42.    Ola Kaellenius, Chairman of the Board of Management of MBG and

Chairman of the Board of Management of Mercedes-Benz AG, said it best: " 'The backbone of [Mercedes] marketing and sales distribution network will remain the dealership.' "  Automotive News, "Mercedes-Benz seeks new communication ties to customers," available at https://www.autonews.com/article/20150114/OEM09/150119825/mercedes-benz-seeks-new-communication-ties-to-customers (quoting Ola Kaellenius) (last accessed September 25, 2023).  " 'There will be a one-to-one relationship between the manufacturer and the dealer,' a role that the dealer has always had, he said." *Id.* (same).

43.    Defendants sold or leased the Putative Class Vehicles under implied warranties of merchantability. Defendants impliedly warranted the Putative Class Vehicles to be merchantable and fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. Defendants are under a duty to engineer, manufacture, develop, construct, inspect, and test the Putative Class Vehicles to make them suitable for the ordinary purposes of their use.

44.    Defendants breached their warranties for the Putative Class Vehicles because of the latent defect with the interior Veneer Wood Trim. Defendants

breached their warranties by failing to repair the interior Veneer Wood Trim as

warranted, and otherwise continuing to use the defective interior Veneer Wood Trim

on their vehicles.

45.    In breach of Defendants' warranties, the Putative Class Vehicles are

defective, unfit for the ordinary purposes for which they are intended to be used, and

not merchantable.

46.    All Mercedes vehicles, including all of the putative class vehicles,

come with a comprehensive Owner's Manual or Operator's Manual ("Manual").

These are lengthy booklets that are usually located within a vehicle's glove

compartment or other storage compartment.  These booklets contain information

regarding the vehicle including operation, care, maintenance, safety features,

technical information, and other important information pertaining to all aspects of

the vehicle.

47.    Defendants encourage all Mercedes vehicle owners to read the Manual

to help familiarize them with their vehicle. Defendants further advise vehicle owners

that failure to abide by instructions and warnings in the Manual can result in damage

to the vehicle and result in denial of warranty coverage. Defendants consider the

Manual part of the vehicle and state in the Manual "Keep these documents in the

vehicle at all times. If you sell the vehicle, always pass all documents on to the new

owner." (*See* GL Operator's Manual at 3 (2013),
https://www.mbusa.com/content/dam/mbnafta/us/owners/manuals/2013/operators/
MY13_GL_Operator.pdf or GL Operator's Manual at 3 (2016),
https://www.mbusa.com/content/dam/mbnafta/us/owners/manuals/2016/operators/
MY16_GL_Operator.pdf) (last accessed January 3, 2024)  By including this
language, Defendants clearly intend for all language included in the Manual to be
seen and to apply for the life of the vehicle, for all vehicle owners.

48.    The Manual contains important information about the vehicle warranty
and specifically states that the applicable terms of the warranty for each vehicle are
found in the Service and Warranty booklet. Defendants instruct anyone who needs
a replacement Service and Warranty booklet to contact an authorized Mercedes-
Benz center. Service and Warranty booklets can also be found online via the
Mercedes-Benz website.

49.    The Manual instructs vehicle owners to use genuine Mercedes-Benz
parts that are subject to strict quality control. The Manual further states "(e)very part
has been specifically developed, manufactured or selected for and adapted to
Mercedes-Benz vehicles. Therefore, only genuine Mercedes-Benz parts should be
used." (*See* GL Operator's Manual at 24 (2013),
https://www.mbusa.com/content/dam/mbnafta/us/owners/manuals/2013/operators/

MY13_GL_Operator.pdf or GL Operator's Manual at 25 (2016), https://www.mbusa.com/content/dam/mbnafta/us/owners/manuals/2016/operators/ MY16_GL_Operator.pdf) (last accessed January 3, 2024). The Manual also states that genuine Mercedes-Benz parts can be obtained through Mercedes-Benz centers. This includes the Veneer Wood Trim. The Manual states that failure to use genuine Mercedes-Benz parts can jeopardize the operation and safety of the vehicle.

50.    Significantly, the Manual instructs vehicle owners to visit the Mercedes-Benz website for more information on Mercedes-Benz vehicles thereby incorporating the information contained on the website into the Manual provided to all class members. The Manual is also readily available online and through Mercedes-Benz apps.

51.    The Manual contains a section on the Veneer Wood Trim that is at issue in this matter, specifically detailing how to care for and clean the genuine wood and trim elements. As a result, through the Manual, Defendants assert that the Veneer Wood Trim is a specific genuine part that was specifically developed, manufactured or selected for the specific vehicle, provide instructions for care of the Veneer Wood Trim, and direct vehicle owners to seek replacement of vehicle parts through Mercedes-Benz. Yet when Plaintiffs sought replacement of the Veneer Wood Trim in their vehicles, Defendants refused to do so without out-of-pocket

payment.

52.    Mercedes-Benz also maintians a website on which one can purchase genuine Mercedes-Benz parts.[2] A review of the website finds that Veneer Wood Trim parts are readily available for Putative Class Vehicles but come with a substantial cost. The cost does not include the associated labor to properly install the Veneer Wood Trim panel.  The fact that the Veneer Wood Trim parts are readily available from Mercedes-Benz indicates that there is a demand for the replacement of Veneer Wood Trim.

### B. PLAINTIFF MONILAW'S FACTS

53.    In July of 2019, Jennifer Monilaw purchased a 2013 Mercedes GL, Vehicle Identification No. 4JGDF7CE2DA185955, with Veneer Wood Trim from an authorized Mercedes-Benz dealership in Barrington, Illinois.

54.    At the time Ms. Monilaw purchased her vehicle, it had approximately 56,000 miles.  As a used vehicle, Defendants received a benefit from the sale of the vehicle to Ms. Monilaw.

55.    One of the main and important reasons for Ms. Monilaw selecting her Putative Class Vehicle was the fit and finish of the interior, which Mercedes repeatedly assured her was superior, exclusive, and high quality.

---

[2] https://mbparts.mbusa.com/

56.    Prior to her purchase, Ms. Monilaw saw Mercedes' newspaper, magazine, social media, and television ads touting that the new, certified pre-owned, and used Putative Class Vehicles were reliable, durable, of good finish, of high fit, and exceptional quality, and that they were luxury products. Ms. Monilaw relied on Defendants' representations in making her purchase.

57.    Ms. Monilaw's Putative Class Vehicle had not been wrecked nor has the interior been modified or refinished – it has the original interior Veneer Wood Trim.

58.    Ms. Monilaw purchased her Putative Class Vehicle for her personal, family, and household use and on most days and nights stores it safely and purposefully either outside her home or inside her garage. Her Putative Class Vehicle was not exposed to any airborne or environmental influences that would have adversely affected its interior. Notably, other Mercedes vehicles of similar mileage which do not include the interior Veneer Wood Trim from the factory do not have the identified issues with interior cracking.

59.    Ms. Monilaw expected her Putative Class Vehicle to be of good and merchantable quality, materials, and workmanship and not defective. She had no reason to know, or expect, that the interior of her Putative Class Vehicle was defective. Ms. Monilaw does not have any expertise or special skill in automobile

interior trim or manufacturing of the same. Had she known that the interior of her Putative Class Vehicle was defective, she would not have bought her Putative Class Vehicle or would have paid less for it.

60.    In the warranty booklet provided to Ms. Monilaw, Defendants represented that her Putative Class Vehicle was free of defects.

61.    Ms. Monilaw first noticed that there was cracking on the Veneer Wood Trim on the driver side and passenger side on her Putative Class Vehicle between October and December of 2020.

62.    Between October and December of 2020, Ms. Monilaw called her authorized Mercedes-Benz dealership and reported the cracking on the Veneer Wood Trim on her Putative Class Vehicle. The representative from her Mercedes-Benz dealership informed her that a repair or replacement was not covered under her warranty and that replacing the Veneer Wood Trim would be expensive.

63.    The following pictures show Ms. Monilaw's interior Veneer Wood Trim today and the obvious defects:

 

64.    Ms. Monilaw's vehicle is just one of thousands of Putative Class Vehicles that have this defect in the interior trim that results in cracking of the interior Veneer Wood Trim.

### C. PLAINTIFF BURZESE'S FACTS

65.    In August of 2021, Ms. Burzese purchased a 2016 Mercedes GL, Vehicle Identification No. 4JGDA5HB9GA725047, with Veneer Wood Trim.

66.    At the time Ms. Burzese purchased her vehicle, it had 35,217 miles. One of the main and important reasons for Ms. Burzese selecting her Putative Class Vehicle was the fit and finish of the interior, which Mercedes touted extensively to her as superior, exclusive, and high quality.

67.    Prior to her purchase, Ms. Burzese saw Mercedes' newspaper,

magazine, social media, and television ads touting that the new, certified pre-owned, and used Putative Class Vehicles were reliable, durable, of good finish, of high fit, and exceptional quality. Ms. Burzese relied on Defendants' representations in making her purchase.

68.     Ms. Burzese's Putative Class Vehicle has not been wrecked nor has the interior been modified or refinished – it has the original interior Veneer Wood Trim.

69.     Ms. Burzese purchased her Putative Class Vehicle for her personal, family, and household use and on most days and nights stores it safely and purposefully either outside her home or inside her garage. Her Putative Class Vehicle was not exposed to any airborne or environmental influences that would have adversely affected its interior. Notably, other Mercedes vehicles of similar mileage which do not include the interior Veneer Wood Trim from the factory do not have the identified issues with interior cracking.

70.     Ms. Burzese expected her Putative Class Vehicle to be of good and merchantable quality, materials, and workmanship and not defective. She had no reason to know, or expect, that the interior of her Putative Class Vehicle was defective. Had she known the interior trim was defective, she would not have bought her Putative Class Vehicle or would have paid less for it. Ms. Burzese does not have any expertise or special skill in automobile interior trim or manufacturing of the

same.

71.     Ms. Burzese  first noticed that there was cracking on the Veneer Wood Trim on her Putative Class Vehicle in Winter 2022. Cracking currently exists on Ms. Burzese's front driver side door, front passenger side door, and rear driver side door.

72.     Following the appearance of the Veneer Wood Trim cracking, Ms. Burzese called her local authorized Mercedes-Benz dealership and requested an appointment to have her cracked Veneer Wood Trim inspected.

73.     Ms. Burzese was informed by the Mercedes-Benz dealership that the Veneer Wood Trim would not be repaired or replaced  under a warranty and it would cost over one thousand dollars ($1,000) to replace the Veneer Wood Trim and the replacement of the original interior would substantially depreciate the value of the vehicle. Ms. Burzese decided the out-of-pocket expense to replace the Veneer Wood Trim was too much and did not replace the cracked Veneer Wood Trim.

74.     Ultimately, Mercedes has refused to repair or replace the Veneer Wood Trim interior of Ms. Burzese's vehicle at no cost.

75.     The following pictures show Ms. Burzese's interior Veneer Wood Trim today and the obvious defects:







76.     Ms. Burzes's vehicle is just one of thousands of Putative Class Vehicles that have the defect in the interior trim that results in cracking of the interior Veneer Wood Trim.

### D. THE INTENDED AND ORDINARY PURPOSE OF A MERCEDES VEHICLE

77.     Plaintiffs bought their Putative Class Vehicles for more than transportation.  Plaintiffs' Putative Class Vehicles are not solely for "transportation," as non-luxury vehicles might be, rather their intended and ordinary purpose includes display, enjoyment, and resale value. Plaintiffs each sought out Mercedes vehicles for purposes of displaying the vehicle's premier quality, enjoying the unique aesthetics of a Mercedes with their normally unparalleled interior fit and finish, and for their high resale value specifically attributed to their aesthetics, durability of

materials, and premier quality. In the course of dealings and trade between Plaintiffs and Defendants, Defendants also advertised the Putative Class Vehicles to Plaintiffs as more than mere transportation. Defendants, in their "Vehicle Care Guide," a resource available to consumers, acknowledge this: "the appearance of your Mercedes-Benz is a main component of its high resale value (a long-standing additional ownership benefit)." Defendants also expressly merchanted the Putative Class Vehicles as being ones with exceptional "visual presence" and where "every visible surface has been crafted with the finest materials and coatings to ensure the best appearance and durability."

78.    Ola Kaellenius, who spent several years heavily involved in marketing and sales for MBG, has confirmed that Mercedes vehicles are neither bought just for transportation nor advertised as mere transportation: "'Mercedes must continue to deliver the dream,' said Kaellenius. 'We have the customer with the right aspiration and the right dream. A brand is promise. Most customers in the luxury segment buy the brand promise because they expect the brand to deliver.' " *Supra,* Automotive News (quoting Ola Kaellenius) (last accessed September 25, 2023).

### E. MERCEDES' MARKETING AND CONCEALMENT

79.    Mercedes manufactured and sold the Putative Class Vehicles with the Veneer Wood Trim Defect while willfully concealing the true inferior quality and

sub-standard performance of the Putative Class Vehicles' interior trim through systematic advertising campaigns and sales practices.

80.    Mercedes directly markets the Putative Class Vehicles to consumers *via* extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

81.    Mercedes' marketing materials describe the various Putative Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," "luxurious interiors," and "the most advanced vehicles on the road." Mercedes Pinterest Account, www.pinterest.com, last access November 3, 2023. Mercedes' slogan for their vehicles is "[t]he best or nothing." According to Defendants, the heart and soul of a Mercedes vehicle are "perfection" and "fascination." Defendants' successful marketing affords them a substantial price premium for their vehicles compared to their non-luxury competitors.

82.    Defendants spend billions of dollars on a highly sophisticated and continuous media campaign to ensure consumers know Mercedes is a luxury brand whose sales depend on consumers having an "emotional experience" resulting from the "visual presence" of their vehicles, as stated publicly multiple times since 2011 by Stephen Cannon who was President of Mercedes-Benz USA. They do so on the premise that their vehicles have better appearance, drivability, fit, and finish than

other vehicles. The marketing is deliberate, precise, and effective. Defendants' marketing is comparative in nature and designed to create the impression that the Putative Class Vehicles are superior to their competitors and non-luxury vehicles, and it does so using subtle, specific language that leads consumers to draw comparisons between Mercedes and non-luxury brands.

83.    Although Mercedes knew or should of known of the Veneer Wood Trim interior's propensity to crack on Putative Class Vehicles, it failed to notify Plaintiffs and Putative Class Members of this prior to their purchase of the vehicles.

84.    Since 2010, "[t]he best or nothing" has been the slogan used in almost every media campaign created by Mercedes to describe their vehicles. When "[t]he best or nothing" slogan was first rolled out, Dr. Joachim Schmidt, then the Executive Vice President-Sales and Marketing for Mercedes, stated: "For us, that means we want to deliver the very best in all areas – be that in research and development, production, sales, service and aftermarket business or in purchasing." According to Dr. Schmidt, the claim made in the slogan is reflected in Mercedes' core values of perfection, fascination, and responsibility and is also a part of their corporate culture. Autotrader, *Mercedes-Benz has New Global Slogan: The Best or Nothing* (June 2010),    https://www.autoevolution.com/news/mercedes-launches-media-blitz-for-new-models-21278.html, last accessed November 3, 2023.

85.    According to Mercedes' Vehicle Care Guide, the "emotional experience" that results from the "visual presence" of their vehicles "is why every visible surface has been crafted with the finest materials and coatings to ensure the best appearance and durability." Mercedes-Benz Vehicle Care Guide (1999) available at http: assets.mbusa.com/vcm/CAC_RAPMD/01vehiclecareguide.pdf (last visited Oct. 10, 2023). Mercedes goes on to inform the consumers that "[a]s you might expect, aside from its visual attractiveness, the appearance of your Mercedes-Benz is a main component of its high resale value (a long-standing additional ownership benefit)." *Id.*

86.    The interior of the vehicle is an essential part of that attractiveness and appearance, and it drives the "high resale value" of the Putative Class Vehicles. Mercedes-Benz Vehicle Care Guide (1999) available at http: assets.mbusa.com/vcm/CAC_RAPMD/01vehiclecareguide.pdf (last visited Oct. 10, 2023).

87.    With respect to CPO vehicles, Mercedes touted their "painstaking certification process." Indeed, "[t]o qualify for Pre-Owned Certification, a Mercedes-Benz vehicle must meet stringent criteria and pass a rigorous inspection." That inspection includes a "32 Point Appearance Inspection," three of which cover "Trim" ("Wood and/or Chrome Trim," "Trim and Moldings," and "Door Panels"),

to ensure that every "Certified Pre-Owned vehicle is a clean-skinned beauty . . . with high quality fit and finish, inside and out."

88.    Plaintiffs and the Putative Class Members were exposed to Defendants' pervasive, long-term, national, multimedia marketing campaign touting the supposed quality and durability of the Putative Class Vehicles and their component parts, including interior trim. Resultantly, Plaintiffs and Putative Class Members formed a reasonable belief and expectation that the interior Veneer Wood Trim in the Putative Class Vehicles was of high quality, would endure, and would positively impact resale value of the vehicles and would not crack under normal circumstances. Plaintiffs and Putative Class Members justifiably relied on this reasonable belief and Defendants' misleading marking that concealed the Veneer Wood Trim Defect when they purchased their Putative Class Vehicles.

89.    Plaintiffs and the Putative Class, in deciding to purchase the Putative Class Vehicles, also reasonably relied upon Mercedes to inform the public and potential purchasers of Mercedes cars of any defects in the Putative Class Vehicles, including defects in the Veneer Wood Trim. Mercedes failure to inform Plaintiffs and Putative Class Members of the defect with the interior Veneer Wood Trim has caused Plaintiffs and Putative Class Members harm. The defect also make sharp and potentially dangerous edges which could cut owners and occupants of Putative Class

Vehicles.

1. **Mercedes Knew Or Should Have Known Of The Interior Veneer Wood Trim Defect Prior To Sale Or Lease Of The Putative Class Vehicles.**

90.    Defendants knew or should have known of the defects with the interior Veneer Wood Trim used in Putative Class Vehicles. Defendants knew or should have known of these defects at the time they advertised and sold the Putative Class Vehicles and thereafter when they continued to disseminate information about the vehicles for Plaintiffs and those Putative Class Members who purchased their Putative Class Vehicles on the primary and secondary markets.

91.    At all relevant times, the defects in the interior Veneer Wood Trim that Mercedes knew or should have known about included—but were not limited to—defects in the manufacture, process, materials, and workmanship of the vehicle. Mercedes failed to inform Plaintiffs and the Putative Class Members about the defects, and the defects have reduced the vehicle's value.

92.    Prior to using a new interior trim system in a vehicle, automakers such as Mercedes typically employ multiple standards and test protocols to ensure long life and film integrity of the interior trim system. In addition to extensive exterior and accelerated weathering evaluation of materials there is additional aggressive testing prior to the qualification of automotive interior trim systems to ensure the

systems will endure when exposed to environmental elements. These tests often run over the course of two-to-five years before a vehicle using the interior trim system is brought to market.

93.    Most of these test procedures are developed and standardized by the American Society for Testing and Materials ("ASTM") and the Society of Automotive Engineers ("SAE"), and typically include the following:

a) accelerated weathering tests to assess paint color, trim durability, gloss retention, and appearance in general, such as Xenon Arc (subjecting test panels to intense radiation), QUV (subjecting test panels to high ultra-violet light and condensing humidity cycles), EMMAQUA (placing test panels on racks that rotate with the sun to provide maximum UV light exposure), and humidity tests (subjecting test panels to 100% relative humidity at 100°F for several weeks);

b) long-term outdoor weathering tests, where test panels are placed on so-called "test fences" at 45-degrees facing south (according to ASTM standards) in various environments, such as Florida (high UV light, humidity, and salt spray), Arizona (intense UV light and temperature), and industrial sites (high pollutants such as acid rain and various

chemicals);

c) corrosion resistance tests, including salt spray (subjecting test panels to 5 wt. salt spray at 95°F for several weeks), cyclic corrosion (subjecting test panels to various cycles of salt spray, humidity, wet/dry, temperature), condensing humidity (subjecting test panels to temperature cycling in highly saturated air, CASS (subjecting test panels to salt spray with added acetic acid for accelerated testing), and Kesternich (subjecting test panels to acid rain simulation);

d) physical and mechanical tests, including flexibility, impact resistance, abrasion resistance, scratch and mar resistance, coating thickness, adhesion, and hot and cold cycling; and

e) chemical properties testing, including resistance to solvents, chemicals, and various fluids the vehicle will likely encounter in the open environment.

94.    It is believed that Mercedes performed several of the above-described ASTM and SAE test procedures. In addition, Mercedes has developed what is referred to as "Mercedes SAE Standards & Testing" that are used in connection with the testing of their vehicles, including DBL 5471 for a test relating to the "Trim & Molded Padded Parts for Vehicle

Interiors (composite parts)" and DBL 5307 "Flame Retardant Properties / InteriorTrim Parts," as well as various other tests relating to the performance of the interior trim materials used in their vehicles, including the Putative Class Vehicles, in simulated real-world conditions. "Applied Technical Services," Mercedes SAE Standards & Testing, http://www.atslab.com/automotive-testing/mercedes-sae-standards-testing.php (last visited Oct. 10, 2023).

95.    The development of the Veneer Wood Trim system, including the testing performed in connection therewith, would have revealed the Veneer Wood Trim Defect. The details regarding the testing performed by Mercedes and the results of that testing are in the exclusive custody and control of Mercedes.

96.    Upon information and belief, prior to the manufacture and sale of the Putative Class Vehicles, Mercedes knew or should have known of the Veneer Wood Trim Defect through, or as evidenced by, sources such as pre-release materials, workmanship, engineering, manufacturing, development, and testing information; technical service bulletins; service center data; early consumer complaints made directly to Mercedes and/or posted on public online vehicle-owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs and Putative Class Members without discovery.

2. **Mercedes Knew Or Should Have Known Of The Veneer Wood Trim Defect From Putative Class Member Complaints Made Directly To Mercedes.**

97.    Mercedes knew or should have known about the Veneer Wood Trim Defect based on complaints made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of cracking caused by the defective trim, alerted Mercedes to this substantial defect affecting one of the most popular and highest-selling vehicle features.

98.    Information as to the full extent of complaints made directly to Mercedes about the defective trim is information presently in the exclusive custody and control of Mercedes and is not available to Plaintiffs prior to discovery.

99.    However, many Putative Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the Veneer Wood Trim Defect issues they experienced. The number and consistency of these complaints should have alerted Mercedes to the existence of the Veneer Wood Trim Defect. *See, e.g.*, *Cracked burl trim*, MBWORLD (May 2, 2017), https://mbworld.org/forums/gl-class-x166/664947-cracked-burl-trim.html (customer contacted Mercedes dealership and MB USA regarding crack in wood trim on driver's side in 2013 GL550).

3. **Mercedes Knew Or Should Have Known Of Veneer Wood Trim Defect From Repair Data.**

100.    Mercedes also knew or should have known about the Veneer Wood

Trim Defect because of the large number of inquiries regarding replacement/repair on vehicles with Veneer Wood Trim interior due to cracking.

101. Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles at their dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Mercedes' control and unavailable to Plaintiffs prior to discovery.

**4. Mercedes Knew Or Should Have Known Of The Veneer Wood Trim Defect Based On Putative Class Member Complaints On Public Online Forums.**

102. In addition to complaints made directly to Mercedes, many Putative Class Vehicle Members and owners posted complaints about the Veneer Wood Trim Defect on public online vehicle-owner forums. *See* paragraph 105, *infra*, for examples.

103. As shown by this small sampling of complaints from forums and websites, consumers have been vocal in complaining about the Veneer Wood Trim Defect and the damage it has caused for years. A multi-billion-dollar company devoted to vehicle materials, engineering, manufacturing, and development such as Mercedes undoubtedly tracks and has tracked such sites and was aware or should reasonably have been aware of the Veneer Wood Trim Defect in the Putative Class

Vehicles.

104.   The following are screen captures of various complaints made on forums dedicated to discussion of Mercedes-Benz vehicles:

## Sudden crack on interior wood

👁 3883 Views    💬 4 Replies    👤 4 Participants    🕐 Last post by jlexvold, Dec 30, 2020

A    **Ala357** ✓ Discussion Starter · Dec 26, 2020                              ⋮

Hello,

I was wondering if anyone had a solution to this. Overnight a couple cracks appeared on the woods on the door panel in my gle 350 2017. I don't know if there's anyway i could repair it or cover it with a carbon vinyl wrap. I would appreciate any suggestions.

💬 Reply    🔖 Save    👍 Like

A    **Ala357** ✓ Discussion Starter · #2 · Dec 26, 2020                              ⋮

This is a picture of one of the cracks



*Sudden crack on interior wood*, BENZWORLD.ORG (Dec. 26, 2020),

https://www.benzworld.org/threads/sudden-crack-on-interior-wood.3065974/.



*Crack in burl walnut door trim*, MERCEDES FORUM (Feb. 19, 2019),

https://mercedesforum.com/forum/new-mercedes-benz-forum-members-area-4/crack-burl-walnut-door-trim-59315/.



*2015 GL450 Passenger side trim cracked*, #1, MBWorld (Nov. 19, 2020), https://mbworld.org/forums/gl-class-x166/799678-2015-gl450-passenger-side-trim-cracked.html.



*Interior    Trim    Damage*,    #1,    MBWᴏʀʟᴅ    (Feb.    19,    2019),

https://mbworld.org/forums/ml63-amg-w166/736401-interior-trim-damage.html.



*Black    Ash    Wood    Cracking?*,    #12,    MBWᴏʀʟᴅ    (May    18,    2017),

https://mbworld.org/forums/c63-c63s-amg/662000-black-ash-wood-cracking.html

105.    In sum, Mercedes has actively concealed the existence and nature of
the latent defects with the interior Veneer Wood Trim from Plaintiffs and the
Putative Class Members since at least early 2013 despite their knowledge of the
existence and pervasiveness of the Veneer Wood Trim, and certainly well before
Plaintiffs and the Putative Class Members purchased their Putative Class Vehicles.
Specifically, Mercedes has:

    a)  failed to disclose, at and after the time of purchase, lease, and/or
        service, any and all known material defects of the Putative Class
        Vehicles, including the Veneer Wood Trim Defect;

    b)  failed to disclose, at and after the time of purchase, lease, and/or

service, that the Veneer Wood Trim in the Putative Class Vehicles was
defective and not fit for its intended purposes;

c)  failed to disclose, and actively concealed, the fact that the Veneer Wood
    Trim used on the Putative Class Vehicles was defective, despite the fact
    that Mercedes learned of the defect as early as 2013, and likely even
    earlier;

d)  failed to disclose, and actively concealed, the existence and
    pervasiveness of the Veneer Wood Trim Defect even when directly
    asked about it by Putative Class Members during communications with
    Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and
    Mercedes service centers;

e)  actively concealed the Veneer Wood Trim Defect by refusing to replace
    the defective Veneer Wood Trim for Putative Class Members when
    informed of defect.

**F.  PLAINTIFFS AND PUTATIVE CLASS MEMBERS WERE DAMAGED BY THE
    VENEER WOOD TRIM DEFECT**

106.  Plaintiffs and the Putative Class Members purchased or leased the
Putative Class Vehicles based on their reasonable but mistaken belief that their
Putative Class Vehicles were of high quality, durable, and free of defects. However,
the Putative Class Vehicles delivered by Mercedes were not those for which

Plaintiffs and the Putative Class Members bargained. Rather, the Putative Class Vehicles suffered from a common defect—the Veneer Wood Trim Defect. Had Plaintiffs and the Putative Class Members known of the trim defect, they would have either: (a) paid substantially less for the Putative Class Vehicles; (b) required an immediate remedy that restored the Putative Class Vehicles to the conditions bargained for; or (c) not purchased or leased the Putative Class Vehicles.

107.   Because of the disparity between the quality of the Putative Class Vehicles negotiated for and the Putative Class Vehicles actually received, Plaintiffs and the Putative Class Members suffered economic harm.

108.   This economic harm can be quantified as: (a) the economic value of an effective remedy that restores the Putative Class Vehicles to their expected conditions (or the economic harm from the lack of an adequate remedy); (b) the discount that Plaintiffs and the Putative Class Members would have required to accept the Putative Class Vehicles in their actual condition; and/or (c) the diminished value of the Putative Class Vehicles, both those that have had their Veneer Wood Trim repaired or replaced and those that have not.

109.   Mercedes tells their dealers that when evaluating vehicles for inclusion in their CPO Program that they "ensure our Certified Pre-Owned vehicles offer the hallmark appearance of a Mercedes-Benz" and to "evaluate and address any areas in

need of repair or refinishing—both inside and out—to provide the high-quality finish for which Mercedes-Benz is known." Mercedes-Benz, 2016 CPO Brochure, available at https://s3.amazonaws.com/cdn.autoipacket.com/brochures/mercedes-benz/cpo/2019_mb_cpo_brochure.pdf. Thus, Mercedes should not have certified for sale a Putative Class Vehicle in which the defect manifested.

110. Kelley Blue Book ("KBB") similarly bases its appraisals on the condition of the vehicle. KBB divides the condition of used vehicles into the following four grades:

> **Excellent** condition means that the ***vehicle looks new***, is in excellent mechanical condition and needs no reconditioning. This vehicle has never had any paint or body work and is free of rust. The vehicle has a clean Title History and will pass a smog and safety inspection. The engine compartment is clean, with no fluid leaks and is free of any wear or visible defects. The vehicle also has complete and verifiable service records. Less than 5 percent of all used vehicles fall into this category.

> **Good** condition means that the vehicle is ***free of any major defects***. This vehicle has a clean Title History, the paint, body ***and interior have only minor (if any) blemishes***, and there are no major mechanical problems. There should be little or no rust on this vehicle. The tires match and have substantial tread wear left. A "good" vehicle will need some reconditioning to be sold at retail. Most consumer owned vehicles fall into this category.

> **Fair** condition means that the ***vehicle has some*** mechanical or ***cosmetic defects*** and needs servicing but is still in reasonable running condition. This vehicle has a clean Title History, the paint, body and/or ***interior need work performed by a professional***. The tires may need to be replaced. There may be some repairable rust

damage.

> **Poor** condition means that the **vehicle has severe** mechanical and/or **cosmetic defects** and is in poor running condition. The vehicle may have problems that cannot be readily fixed such as a damaged frame or a rusted-through body. A vehicle with a branded title (salvage, flood, etc.) or unsubstantiated mileage is considered "poor." A vehicle in poor condition may require an independent appraisal to determine its value. (emphasis added)

The vehicle's interior, including trim, has a substantial effect on resale value and, by nature and available valuation scales, the presence of the Veneer Wood Trim Defect degrades the value of a car that is otherwise in "excellent" or "good" condition down to "fair" condition. Additionally, a car that is in "fair" condition cannot possibly be "exceptional," "the best," have "high resale value," be a "clean-skinned beauty . . . with high quality fit and finish, inside and out," or exhibit or express any of the other adjectives used by Mercedes to advertise their vehicles as luxury or exclusive.

111.    Plaintiffs and the Putative Class Members paid premiums to purchase and lease the Putative Class Vehicles as a result of the brand, quality, durability, and value representations made by Mercedes. A vehicle purchased or leased with the reasonable expectation that it is of high quality and durable as advertised is worth more than a vehicle known to be subject to the problems and defects associated with the Veneer Wood Trim interior. Plaintiffs and the Putative Class Members were harmed from the day they drove their Putative Class Vehicles off the lot because

they did not get what they paid for—a high-quality and durable vehicle that would retain its value under normal conditions and it was actually a vehicle in "Fair" or worse condition.

112.   As a direct result of Mercedes' misrepresentations and omissions, Plaintiffs and the Putative Class Members overpaid for their Putative Class Vehicles and did not receive the benefit of their bargain. Plaintiffs and the Putative Class Members paid a premium for the Putative Class Vehicles, which Mercedes advertised as being durable and of high-quality, and received Putative Class Vehicles that contained a known but concealed defect. Mercedes was unjustly enriched because it obtained and retained monies paid by  Putative Class Members who paid a price for the Putative Class Vehicles that was higher than the value of the vehicles they received in return.

113.   In addition, as a result of the disclosure of the trim defect the value of the Putative Class Vehicles has decreased, and, therefore, Plaintiffs and the Putative Class Members have suffered a direct pecuniary loss in the form of the decreased value of their Putative Class Vehicles, even when the Veneer Wood Trim cracking has not yet manifested.

114.   Because of Mercedes' unfair, deceptive, and/or fraudulent business practices, and their failure to disclose the Veneer Wood Trim Defect and the

problems associated therewith, owners and lessees of the Putative Class Vehicles have suffered losses in money and/or property.

115.   Plaintiffs and the other Putative Class Members were injured as a result of Mercedes' conduct in that Plaintiffs and the other Putative Class Members overpaid for their Putative Class Vehicles and did not receive the benefit of their bargain, and their Putative Class Vehicles have suffered a diminution in value, whether the trim is repaired or replaced or not. These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

### G. FRAUDULENT CONCEALMENT FACTS DETAILED

116.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials and information regarding the Putative Class Vehicles. Mercedes necessarily is in possession of, or has access to, all this information. Plaintiffs are, however, able to provide sufficient specificity on the concealment, as set forth herein.

117.   Defendants owed a duty to Plaintiffs and the Putative Class Members to disclose to them what was known about the Veneer Wood Trim as soon as it became known to Mercedes. Defendants knew or should have known that Plaintiffs and the Putative Class Members chose the Mercedes brand intentionally and with

the purpose of displaying their luxury vehicles. Because of the long-standing reputation of high quality established by Mercedes, Defendants were on notice that the Plaintiffs and the Putative Class Members expected certain qualities from the Veneer Wood Trim.

118.    Plaintiffs' claims arise out of Mercedes' fraudulent concealment of the interior trim defect and the cracking of the Putative Class Vehicles' Veneer Wood Trim it causes, and Mercedes' representations about the quality, durability, and value of the Putative Class Vehicles, including the trim used in the Putative Class Vehicles.

119.    To the extent that Plaintiffs' claims arise from Mercedes' fraudulent concealment, there is no one document or communication, and no one interaction, upon which the Plaintiffs and Putative Class Members base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased their Putative Class Vehicles, Mercedes knew, or was reckless in not knowing, of the Veneer Wood Trim Defect; Mercedes was under a duty to disclose the trim defect based upon their exclusive knowledge of it, their affirmative representations about it, and their concealment of it. Mercedes never disclosed the trim defect to Plaintiffs or the public at any time or place or in any manner.

**1.  <u>Defendants' Duty To Disclose The Known Defect</u>**

120.    The particular circumstances of this case gave rise to a duty for

Defendants to disclose the Veneer Wood Trim Defect to Plaintiffs and Putative Class Members. As noted above, the Plaintiffs do not have any expertise or specific knowledge of vehicle interior manufacturing or wood trim manufacturing. On the other hand, Defendants have superior and extensive knowledge and expertise concerning the subject interior Veneer Wood Trim. Defendants have manufactured and sold vehicles with Veneer Wood Trim for decades, which gives them expertise and asymmetric knowledge of interior trim materials and workmanship as compared to Plaintiffs.

121.    Further, Plaintiffs have no expertise in vehicle trim manufacturing and treatment of the Veneer Wood used by Defendants in their interior wood trim, and they reasonably relied on Defendants (with their significant expertise in the manufacture and treatment of interior Veneer Wood Trim) and their representations about the Veneer Wood Trim. Defendants were required to, and had a duty to, disclose their full knowledge on that subject, which included their knowledge of the Veneer Wood Trim Defect.

122.    Additionally, and as noted above, Defendants have made great efforts to tout the superior, luxurious nature of the Putative Class Vehicles and have specifically marketed towards, and gained as customers, Plaintiffs and Putative Class Members through that marketing campaign.

123.   Defendants intended for Plaintiffs and Putative Class Members to rely on Defendants' advertising and luxury reputation.  They were aware that Plaintiffs and Putative Class Members lacked expertise and would be unable to obtain any information related to the Veneer Wood Trim Defect unless the Defendants provided the information, as it was in Defendants' exclusive control.

## 2. Who, What, When, Where, How, And Why of Fraudulent Concealment

124.   Plaintiffs make the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to Defendants, and Plaintiffs further incorporate by reference all statements relied on by Plaintiffs as alleged above:

a) *Who*: Mercedes actively concealed the Veneer Wood Trim Defect from Plaintiffs and the Putative Class Members while simultaneously touting the quality and durability of the Putative Class Vehicles, as alleged, *supra*.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions but, upon information and belief, understand them to be employees within the sales and marketing division of Defendants.  The engineering division of Defendants would have reviewed the sales and marketing material and signed off on each

slogan and advertisement thus implicating the engineering division as well.

b) *What*: Mercedes knew, or was reckless or negligent in not knowing, that the Putative Class Vehicles contain the Veneer Wood Trim Defect, as alleged, *supra*. Mercedes concealed the Veneer Wood Trim Defect and made contrary representations about the quality and durability, and other attributes of the Putative Class Vehicles, as alleged, *supra*.

c) *When*: Mercedes concealed material information regarding the Veneer Wood Trim Defect at all times and made representations about the quality and durability of the Putative Class Vehicles, starting no later than 2013, or at the subsequent introduction of certain years models of Putative Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged, *supra*. Mercedes has not disclosed the truth about the trim defect in the Putative Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the trim defect in Putative Class Vehicles. And when consumers brought their Putative Class Vehicles to Mercedes complaining that the Veneer Wood Trim had cracked in their Putative

Class Vehicles, Mercedes denied any knowledge of, or responsibility for, the Veneer Wood Trim Defect.

d) *Where*: Mercedes concealed material information regarding the true nature of the Veneer Wood Trim Defect in every communication it had with Plaintiffs and the Putative Class Members and made contrary representations about the quality and durability of the Putative Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing in which Mercedes disclosed the truth about the Veneer Wood Trim Defect in the Putative Class Vehicles to anyone outside of Mercedes. Such information is not disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Mercedes' website—despite the fact that Defendants knew, or should have known, of the defect prior to customers purchase of the Putative Class Vehicles.

e) *How*: Mercedes concealed the Veneer Wood Trim Defect from Plaintiffs and the Putative Class Members and made representations about the quality and durability of the Putative Class Vehicles. Mercedes actively concealed the truth about the existence and nature of the Veneer Wood Trim Defect from Plaintiffs and the Putative Class Members at all times, even though it knew or should have known about

the Veneer Wood Trim Defect and knew that information about the Veneer Wood Trim Defect would be important to a reasonable consumer. Mercedes also promised in their marketing materials that the Putative Class Vehicles have qualities that they do not have.

f) ***Why***: Mercedes actively concealed material information about the Veneer Wood Trim Defect in Putative Class Vehicles for the purpose of inducing Plaintiffs and the Putative Class Members to purchase or lease Putative Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality and durability of the Putative Class Vehicles. Had Mercedes disclosed the truth, for example in their advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of it and would not have bought the Putative Class Vehicles or would have paid less for them.

125.   Had Defendants disclosed the Veneer Wood Trim Defect to Plaintiffs and the Putative Class Members prior to sale, either directly or indirectly by placing Plaintiffs and Putative Class Members in a position to learn of the defect, they would not have been damaged.  Armed with knowledge of the defect, the Plaintiffs and Putative Class Members would either have paid less for their Putative Class Vehicle

or wouldn't have purchased one.

126.   Further, had Defendants disclosed the Veneer Wood Trim Defect, the asking price or sticker price of the Putative Class Vehicles would have been considerably less than other Mercedes cars of similar vintage and mileage, but with differing interior trims.  Had Defendants disclosed the Defect, Plaintiffs and the Putative Class Members would have been able to learn of the Veneer Wood Trim Defect prior to purchase or lease.

## CLASS ACTION ALLEGATIONS

127.   Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23. The classes which Plaintiffs seek to represent are composed of and defined as (collectively "Putative Class"):

a) A Putative Class of all consumers who own, owned, lease, or leased a Putative Class Vehicle in the United States (the "Putative Nationwide Class").

b) By Plaintiff Monilaw, a Putative Subclass of all consumers who own, owned, lease, or leased a Putative Class Vehicle in Illinois (the "Putative Illinois Subclass").

c) By Plaintiff Burzese, a Putative Subclass of all consumers who own,

owned, lease, or leased a Putative Class Vehicle in Pennsylvania (the "Putative Pennsylvania Subclass").

128.    The following persons are excluded from the definition of the Putative Class:

    a) U.S. District Court judges, magistrate judges of any U.S. District Court, judges of the U.S. Court of Appeals for the Eleventh Circuit, and U.S. District Court personnel having any involvement with administration and/or adjudication of this lawsuit;

    b) Class counsel and their employees; and

    c) Employees of Defendants.

129.    Plaintiffs brought this action, which may properly be maintained as a class action pursuant to the provisions of the Federal Rules of Civil Procedure, and allege as follows:

    a) Members of the Putative Class are geographically distributed throughout the United States and far exceeds 100,000 in total so that their joinder is impractical;

    b) Common questions of law or fact exist as to all Members of the Putative Class and predominate over any questions affecting only individual Putative Class Members and include, but are not limited to:

a.  Whether the Veneer Wood Trim is defective;

b.  Whether Defendants knew or should have known the Veneer Wood Trim is defective;

c.  Whether Defendants unlawfully misrepresented the quality of their product;

d.  Whether Defendants intentionally misrepresented the quality of their product;

e.  Whether Defendants were unjustly enriched as a result of their deceptive sales practices;

f.  Whether Defendants' conduct violated state statutes in Georgia, Illinois, and Pennsylvania;

g.  Whether Plaintiff and Putative Class Members are entitled to damages and the proper measure of any such damages;

h.  Whether Plaintiffs and Putative Class Members are entitled to an award of attorneys' fees, pre-judgment interest, and costs of this suit;

i.  Whether Plaintiffs and Putative Class Members are entitled to injunctive relief; and

j.  Such other common factual and legal issues as are apparent

from the allegations and causes of action alleged herein;

c) Plaintiffs' claims are typical of the claims of the members of the Putative Class under Federal Rule of Civil Procedure 23. Each member of the Putative Class either owns, owned, leases, or leased a Putative Class Vehicle;

d) Plaintiffs will fairly and adequately protect the interests of the Putative Class as required by Federal Rule of Civil Procedure 23 and have no interests that are adverse to the interests of the Putative Class. They have retained counsel who have substantial experience in the prosecution of class actions;

e) The prosecution of separate actions by individual Members of the Putative Class would create the risk of (i) inconsistent or varying adjudications with respect to individual Members of the Putative Class that would establish incompatible standards of conduct for Defendants; or (ii) adjudications with respect to individual Members of the Putative Class that would, as a practical matter, be dispositive of the interest of the other Members not parties to the adjudication or would substantially impair or impede their ability to protect their interest. By contrast, the conduct of this action as a class action presents far fewer management

difficulties, conserves the resources of the parties and the court system, and protects the rights of each Putative Class Member. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23;

f) Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the Putative Class, causing injury to them and making Class-wide relief appropriate, specifically declaratory and injunctive relief; and

g) The harm suffered by many individual Members of the Putative Class may not be great enough to warrant the expense and burden of individual litigation, which would make it difficult or impossible for individual Members of the Class to redress the wrongs done to them.

### CAUSES OF ACTION

### COUNT ONE
### BREACH OF IMPLIED WARRANTY
### (BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASSES)

130.  Plaintiffs, individually and for the Putative Class, hereby incorporate each and every allegation set forth above as though fully set forth herein.

131.  Defendants impliedly warranted that the Putative Class Vehicles, which

they engineered, manufactured, developed, sold, and/or leased to Plaintiffs and Putative Class Members, were merchantable, fit for their ordinary use, not otherwise injurious to consumers, and would come with adequate warnings. However, the Putative Class Vehicles were neither merchantable, fit for their ordinary use, nor non-injurious to Plaintiffs and Putative Class Members at the time of sale.

132.   Persons who purchased a Putative Class Vehicle are entitled to the benefit of their bargain: a vehicle without defective Veneer Wood Trim that cracks. Plaintiffs and the Putative Class purchased their Putative Class Vehicles because of, among other things, their highly reputed interior build quality and material.

133.   Because the Putative Class Vehicles are equipped with the defective Veneer Wood Trim, the vehicles purchased or leased and used by Plaintiffs and Putative Class Members are unfit for use when sold, and are not merchantable as advertised. Defendants breached the implied warranty of merchantability in the sale or lease of the Putative Class Vehicles to Plaintiffs and Members of the Putative Class in that the vehicles were not fit for their ordinary purpose and not merchantable, which affected the usefulness of the Putative Class Vehicles.

134.   Had the fact that the Veneer Wood Trim Defect existed been disclosed at the time of sale, the Putative Class Vehicles could not have been sold at the same price.

135.    Defendants knew or should have known that their Putative Class Vehicles would be sold and/or distributed by their authorized dealers, which is the only method by which new or CPO Putative Class Vehicles could be sold or leased, and they knew their Putative Class Vehicles would be re-sold by Defendants' authorized dealers and third-party dealers. All such sales, whether new, CPO, or used, were intended to be distributed by dealers and were intended to be bought by immediate and secondary purchasers in the marketplace, and the claimed violations occurred in direct and immediate connection with the consumer transactions that give rise to this claim. Additionally, Defendants exercised direct control over the materials, engineering, and manufacturing of the interior systems of the Putative Class Vehicles.

136.    Plaintiffs and Putative Class Members are in privity with Defendants because they are direct beneficiaries and intended third-party beneficiaries of Defendant's warranties. Defendants' breach of their implied warranties proximately caused the Putative Class to suffer damages in excess of $5,000,000.00.

137.    Plaintiffs and the Putative Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all

Putative Class Vehicles, replacement of all Putative Class Vehicles' Veneer Wood Trim, the refund of money paid to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, and any other relief to which Plaintiffs and the Putative Class may be entitled.

**COUNT TWO**
**EQUITABLE AND INJUNCTIVE RELIEF**
**(BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASSES)**

138.   Plaintiffs, individually and for the Putative Class, hereby incorporate each and every allegation set forth above as though fully set forth herein.

139.   Plaintiffs and Putative Class Members will suffer irreparable harm if Defendants are not ordered to properly repair all of the Putative Class Vehicles immediately, recall all defective vehicles that are equipped with the defective Veneer Wood Trim, and cease and desist from marketing, advertising, selling, and leasing the Putative Class Vehicles with the latent defect.

140.   Such irreparable harm includes but is not limited to likely damages, such as the above described decline in value of the Putative Class Vehicles, as a result of the defects to the Putative Class Vehicles.

141.   Plaintiffs and Putative Class Members are likely to be harmed by Defendants' alleged conduct in the future.   The majority of Mercedes SUVs, which

are the most widely sold Mercedes models, come equipped with Veneer Wood Trim. Plaintiffs and, upon information and belief, many Putative Class Members, are repeat customers of Defendants.    Indeed, according to a 2020 study, 47.8% of Mercedes owners purchased another Mercedes when  buying a new car.  "Brand Loyalty Increasing Amount New-Vehicle Buyers," J.D. Power Finds, J.D. POWER (July 15, 2020), available at https://www.jdpower.com/sites/default/files/file/2020-07/2020046%20U.S.%20Automotive%20Brand%20Loyalty.pdf.  Thus, it is likely that, if the Defendants repair and correct the Veneer Trim Defect, Plaintiffs and Putative Class Members are likely to buy another Mercedes vehicle with Veneer Wood Trim.  With at least 195,000 SUVs sold by Mercedes (68% of vehicle sales) in 2022, numerous Putative Class Members and members of the public are likely to be harmed if Defendants' conduct continues. *See* 2022 (Full Year) USA: Mercedes-Benz  Car  Sales  by  Model  (Jan.  13,  2023),  https://www.best-selling-cars.com/brands/2022-full-year-usa-mercedes-benz-car-sales-by-model/#:~:text=The%20GLC%20SUV%20was%20the,in%20the%20US%20in%202022.  Further, Plaintiffs and Putative Class Members suffer continuing harm because their assets, the Putative Class Vehicles, will always have lower value than what they paid for them.

142.   It is also believed that Defendants, to the extent they have replaced the

Veneer Wood Trim for some of their customers, are replacing the Veneer Wood Trim with other Veneer Wood Trim that has the exact Veneer Wood Trim Defect, thereby making it inevitable that the cracking will manifest itself yet again in the Veneer Wood Trim even for vehicles where the Veneer Wood Trim Defect was allegedly remedied. This represents an existing and continuing threat of harm to Plaintiffs and Putative Class Members. Defendants must be enjoined from attempting to remedy the Veneer Wood Trim Defect by replacing that trim with Veneer Wood Trim from Defendants on-hand inventory, which is believed by Plaintiffs to be equally defective.

143.   Plaintiffs and the Putative Class seek full damages allowable by law and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all Putative Class Vehicles, replacement of all Putative Class Vehicles Veneer Wood Trim, the refund of money paid to own or lease all Putative Class Vehicles at the difference in value between a non-defective and defective vehicle, and any other relief to which Plaintiffs and the Putative Class may be entitled.

**COUNT THREE**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**
**15 U.S.C. §§ 2301, *ET SEQ.***
**(BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASSES)**

144.   Plaintiffs, individually and for the Putative Class, hereby incorporate

each and every allegation set forth above as though fully set forth herein.

145.   Plaintiffs and Members of the Putative Classes are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

146.   Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

147.   The Putative Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

148.   Defendants' implied warranties relate to the future performance of the vehicle because they promised that Putative Class Vehicles would meet certain standards for the reasonable life expectancy of the car.

149.   Defendants have breached and continue to breach the implied warranty of future performance, thereby damaging Plaintiffs and Putative Class Members, when the Putative Class Vehicles fail to perform as represented due to the undisclosed and latent Veneer Wood Trim Defect. Defendants failed to fully cover or pay for necessary inspections, repairs, part replacements and/or Veneer Wood Trim replacements for Plaintiffs and the Putative Class.

150.   Plaintiffs and  Putative Class Members will suffer irreparable harm if Defendants are not ordered to properly repair all of the Putative Class Vehicles immediately, replace the Veneer Wood Trim with non-defective trim, refund of

money paid to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, recall all defective vehicles that are equipped with the defective Veneer Wood Trim, and cease and desist from marketing, advertising, selling, and leasing the Putative Class Vehicles with the latent defect.

151.  Such irreparable harm includes, but is not limited to, likely damages, including but not limited to decline in value, as a result of the defects to the Putative Class Vehicles.

152.  Plaintiffs and the Putative Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all Putative Class Vehicles, replacement of all Putative Class Vehicles' Veneer Wood Trim, the refund of money paid to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, and any other relief to which Plaintiffs and the Class may be entitled. That relief is in excess of $5,000,000.00.

## COUNT FOUR
### UNJUST ENRICHMENT
### (BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASSES)

153.  Plaintiffs, individually and for the Putative Class, hereby incorporate each and every allegation set forth above as though fully set forth herein.

154.  To the extent necessary, Plaintiffs bring this claim in the alternative.

155.  Defendants knew or should have known that Plaintiffs and the Putative Class paid for the Putative Class Vehicles with the expectation that the vehicles would perform as represented.

156.  Plaintiffs and the Putative Class conferred substantial benefits on Defendants by purchasing the defective Putative Class Vehicles. Defendants knowingly and willingly accepted and enjoyed those benefits. These benefits include, but are not limited to, an increase in the sale price of Defendants' new cars based on expected luxury, an increase in the sale price resulting from the increased re-sale value established by the thriving re-sale market and anticipated durability, the revenue Defendants generate and receive from the purchase of CPO vehicles by the Putative Class Members (and their concomitant warranty) and an increase in revenue stemming from repairs of the older Putative Class Vehicles at authorized dealerships/centers.

157.  Defendants exercised direct control over the materials, engineering,

manufacturing, and production of the interior systems, including the defective Veneer Wood Trim, of the Putative Class Vehicles and Plaintiffs and Putative Class Members have a direct link with Defendants.

158.   Defendants' retention of those benefits is inequitable because they obtained those benefits by knowingly selling a product for more than consumers would have purchased it for had they known the truth.

159.   As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff and the Putative Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.  That relief is in excess of $5,000,000.00.

## COUNT FIVE
### FRAUD AND SUPPRESSION CLAIM
### (BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASS)

160.   Plaintiffs, individually and for the Putative Classes, hereby incorporate each and every allegation set forth above as though fully set forth herein.

161.   Plaintiffs and the Putative Class Members purchased or leased the Putative Class Vehicles.

162.   Starting by November 2013, Defendants knew or should have known the true quality and latent defects of the interior Veneer Wood Trim in the Putative Class Vehicles.

163.   Defendants   actively   concealed   and   suppressed   material   facts

concerning the quality of the Veneer Wood Trim used on the Putative Class Vehicles from Plaintiffs and Putative Class Members.

164.   Defendants concealed and suppressed material facts concerning the Veneer Wood Trim Defect causing Putative Class Vehicles' Veneer Wood Trim to crack.  Defendants knew that Plaintiffs and the Putative Class Members would not be able to inspect or otherwise detect the latent defect prior to purchasing or leasing the Putative Class Vehicles.

165.   At all relevant times, Defendants had the duty and obligation to disclose to the Plaintiffs and the Putative Class Members the defects with the Veneer Wood Trim in the Putative Class Vehicles. Defendants breached that duty by failing to disclose the issue with the defective trim, hiding the Veneer Wood Trim Defect, and continuing to sell vehicles with the defective Veneer Wood Trim, despite knowledge of the issues.

166.   Defendants committed the foregoing acts and omissions in order to boost confidence in their vehicles and falsely assure purchasers and lessees of Mercedes' vehicles that the Putative Class Vehicles were world class, comfortable, warranted, and reliable vehicles. Defendants concealed information in order to prevent harm to Defendants and their products' reputations in the marketplace and to prevent Plaintiffs and the Putative Class Members from learning of the defective

nature of the Putative Class Vehicles prior to their purchase or lease. These false representations and omissions were material to Plaintiffs and the Putative Class Members, both because they concerned the quality of the Putative Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Putative Class Vehicles.

167.   Defendants had a duty to disclose the Veneer Wood Trim Defect in the Putative Class Vehicles because it was known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew or should have known the facts were not known to, or reasonably discoverable, by the Plaintiffs and the Putative Class Members. Defendants also had a duty to disclose because they made many general affirmative representations about the quality, warranty, and lack of defects in the Putative Class Vehicles, and specifically, the Veneer Wood Trim, as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, including, with respect to Putative Class member CPO purchases, Defendants provided inspection reports erroneously indicating that the trim was "OK."

168.   Defendants had exclusive control of the information related to the Veneer Wood Trim Defect and the fact that Putative Class Vehicles were constructed

with defective materials.  Plaintiffs and Putative Class Members did not have a way to obtain any information regarding the Veneer Wood Trim Defect or the quality of the trim generally except through Defendants.  Defendants were aware that Plaintiffs and Putative Class Members were relying upon Defendants to provide them complete information, as the sole source of actual data/testing information.  Despite Defendants' awareness of consumers' reasonable reliance, Defendants provided only partial, vague information asserting the high quality and durability of the Putative Class Vehicles generally and the Veneer Wood Trim specifically.

169.   As a result, the Plaintiffs and the Putative Class Members were misled as to the true condition of the Putative Class Vehicles at the time of purchase/lease. The omitted and concealed facts are material because they directly impact the resale value, appeal, and usability of the Putative Class Vehicles purchased or leased by the Plaintiffs and the Putative Class Members. Whether Defendants' products are as stated or backed by Defendants were material concerns to Plaintiffs and the Putative Class Members.

170.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their reputation, sustain their marketing strategy, avoid recalls that would hurt the brand's image, and save money, and did so at the expense of the Plaintiffs and the Putative Class Members.

171.    Had Plaintiffs and the Putative Class Members known the truth, specifically that the Veneer Wood Trim was not durable and long-lasting and that the trim was not "OK," and, to the contrary, was defective, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them. Had the Veneer Wood Trim Defect been disclosed, publicly or otherwise, Plaintiffs and the Putative Class Members would have been in a position such that they would have been aware of those disclosures at or before the time of their purchase/lease of the Putative Class Vehicles.

172.    Defendants omitted, suppressed, or concealed material facts of the defective Veneer Wood Trim used on the Putative Class Vehicles, leading to the same result: the Plaintiffs and the Putative Class Members suffered pecuniary injuries proximately caused by Defendants' suppression of the material facts of the defect, and those injuries include, but are not limited to, loss of value, inconvenience, and repair costs. Those injuries exceed $5,000,000.00.

### COUNT SIX
### VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (BY ALL PLAINTIFFS ON BEHALF OF THE PUTATIVE NATIONWIDE CLASS)

173.    Plaintiffs, individually and for the Putative Nationwide Class, hereby incorporate each and every allegation as though fully set forth herein.

174.    Defendants are each a "person" as defined by the Georgia Fair Business

Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

175.   Plaintiffs Monilaw and Burzese and Putative Class Members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

176.   The purchase or lease of Putative Class Vehicles by Plaintiffs and Nationwide Putative Class Members constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

177.   The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE. ANN. § 10-1-393(b).

178.   By failing to disclose the defective nature of the Putative Class Vehicles to Plaintiff and Putative Nationwide Class Members, Defendants violated the Georgia FBPA, because Defendants represented that the Putative Class Vehicles had characteristics and benefits that they do not have; represented that the Putative Class Vehicles' Veneer Wood Trim was of a particular standard, quality, or grade when it

was of another; and advertised the Putative Class Vehicles with intent not to sell them as advertised.

179.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and resulted in economic harm to owners and purchasers of the Putative Class Vehicles.

180.   Defendants have known of the true characteristics of their Veneer Wood Trim since at least 2013, before the sale or lease of the Putative Class Vehicles, but concealed all of that information, and even to this day continue to conceal it.

181.   Defendants owed Plaintiffs and Putative Nationwide Class Members a duty to disclose the true nature of the Putative Class Vehicles, the devaluation of the Putative Class Vehicles, and the associated costs that would have to be repeatedly expended in order to repair the Putative Class Vehicles due to the Veneer Wood Trim Defect because they:

    a.  Possessed exclusive knowledge of the Veneer Wood Trim Defect, and that it was manufacturing, selling and distributing vehicles throughout the United States that had a latent defect;

    b.  Intentionally concealed the foregoing from Plaintiffs and Putative Nationwide Class Members;

c.  Made incomplete representations about the Veneer Wood Trim on the Putative Class Vehicles generally, and the Veneer Wood Trim Defect in particular, while purposefully withholding material facts from Plaintiffs and Putative Nationwide Class Members that contradicted these representations;

d.  Knew or should have known that its conduct violated the Georgia FBPA; and

e.  Knew or should have known that Plaintiffs and Putative Nationwide Class Members could not reasonably have been expected to learn or discover the Veneer Wood Trim Defect prior to its manifestation.

182.  By failing to disclose and by actively concealing the Veneer Wood Trim Defect, by marketing their vehicles as high quality, by denying the existence of the Veneer Wood Trim Defect, and failing to offer a permanent solution to the Veneer Wood Trim Defect, while presenting themselves as a reputable manufacturer that valued quality and stood behind their vehicles after they were sold, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

183.  Defendants' representations and omissions were material because they directly impact the value, appeal, and usability of the Putative Class Vehicles purchased or leased by Plaintiffs and Putative Nationwide Class Members. Whether a manufacturer's products are as stated or backed by the manufacturer are material concerns to a consumer.

184. As a result of Defendants' misconduct, Plaintiffs and Putative Nationwide Class Members have been harmed and suffered actual damages in that the Putative Class Vehicles' Veneer Wood Trim cracks over time, causing inconvenience, lowering the value of the Putative Class Vehicles, and causing Putative Class Members to spend money to repeatedly repair or temporarily fix the recurring defect.

185. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Nationwide Putative Class Members have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience the Veneer Wood Trim Defect, for which there is no permanent fix. Even if Plaintiffs and Putative Class Members replace the trim with new, likely also defective, Veneer Wood Trim or an alternative interior trim, they've been forced to incur out-of-pocket expenses and simultaneously decreased the value of the Putative Class Vehicle.

186. Defendants' violations present a continuing risk to Plaintiff and Putative Class Members. Defendants' unlawful acts and practices complained of herein affect the public interest.

187. As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs and Nationwide Putative Class Members have suffered

injury-in-fact and/or actual damages.

188.    Plaintiffs and Nationwide Putative Class Members are entitled to equitable relief.

189.    Defendants received proper notice of its alleged violations of the Georgia FBPA pursuant to O.C.G.A. § 10-1-399(b), via letters sent to MBUSA and MBG and their registered service agents on January 8, 2024.  Plaintiffs found Defendants' response to be unsatisfactory.

190.    Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiffs seek, in addition to equitable relief, actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

## COUNT SEVEN
### VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (BY ALL PLAINTIFFS ON BEHALF OF THE PUTATIVE NATIONWIDE CLASS)

191.    Plaintiffs, individually and for the Putative Nationwide Class, hereby incorporate each and every allegation as though fully set forth herein.

192.    Plaintiffs, Putative Nationwide Class Members and Defendants are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1-371(5).

193. The Georgia UDTPA prohibits "deceptive trade practices," which include (1) misrepresenting the "standard, quality, or grade" of goods or services; (2) representing that goods or services have "characteristics . . . uses, benefits, or quantities that they do not have"; (3) advertising "goods or services with intent not to sell them as advertised"; or (4) "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a).

194. Defendants violated the Georgia UDTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Putative Class Vehicles and the quality and characteristics of the Veneer Wood Trim used on the Putative Class Vehicles, by advertising the Putative Class Vehicles and Veneer Wood Trim with the intent not to sell them as advertised, and engaging in misrepresentations that created a likelihood of confusion and misunderstanding as to whether the Veneer Wood Trim is free of defects. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Putative Class Vehicles, Mercedes engaged in one or more of the unfair or deceptive acts or practices prohibited by the Georgia UDTPA, as described herein.

195. Defendants' misrepresentations about the Putative Class Vehicles were material to Plaintiffs and the other Members of the Putative Nationwide Class.

Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and Putative Nationwide Class Members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs and Putative Nationwide Class Members would not have purchased or leased the Putative Class Vehicles, or would have paid significantly less for them.

196.  In the course of their business, Defendants utilized and applied defective Veneer Wood Trim and concealed that it was defective, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive a substantial portion of the purchasing public. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with the intent that consumers would rely upon such concealment, suppression, or omission in connection with the sale of Putative Class Vehicles.

197.  Defendants have known of the true characteristics of their Veneer Wood Trim since at least 2013 and before the sale or lease of the Putative Class Vehicles, but concealed all of that information, and even to this day continues to conceal it despite an ongoing to disclose.

198.  By failing to disclose and by actively concealing the Veneer Wood Trim Defect, by marketing their vehicles as high quality, by denying the existence

of the Veneer Wood Trim Defect, and by failing to offer a permanent solution to the Veneer Wood Trim Defect, while presenting themselves as a reputable manufacturer that valued quality and stood behind their vehicles after they were sold, Defendants engaged in unfair and deceptive business practices in violation of the Georgia UDTPA.

199.   Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Putative Nationwide Class Members, about the true characteristics of the Veneer Wood Trim, the quality of the Mercedes brand, the degraded integrity at Mercedes, and the true value of the Putative Class Vehicles.

200.   Defendants intentionally and knowingly misrepresented material facts regarding the Putative Class Vehicles with an intent to mislead Plaintiffs and the Putative Nationwide Class.

201.   Defendants knew or should have known that its conduct violated the Georgia UDTPA.

202.   As alleged above, Defendants made material statements about the Veneer Wood Trim on the Putative Class Vehicles that were either false or misleading.

203.   Defendants owed Plaintiffs and the Putative Nationwide Class a duty

to disclose the true nature of the Putative Class Vehicles, the devaluation of the Putative Class Vehicles, and the associated costs that would have to be repeatedly expended in order to repair the Putative Class Vehicles due to the Veneer Wood Trim Defect because they:

    a.  Possessed exclusive knowledge of the Veneer Wood Trim Defect;

    b.  Were manufacturing, selling and distributing vehicles throughout the United States that had a latent defect;

    c.  Intentionally concealed the foregoing from Plaintiffs and the Putative Nationwide Class;

    d.  Made incomplete representations about the Veneer Wood Trim in Putative Class Vehicles generally, and the Veneer Wood Trim Defect in particular, while purposefully withholding material facts from Plaintiffs and Putative Nationwide Class that contradicted these representations; and/or

    e.  Knew or should have known that Plaintiffs and the Putative Nationwide Class could not reasonably have been expected to learn or discover the Veneer Wood Trim Defect prior to its manifestation.

204.   Defendants' fraudulent concealment of the Veneer Wood Trim Defect was material to Plaintiffs, the Putative Nationwide Class, and a reasonable consumer would have considered it to be important in deciding whether or not to purchase or lease a Putative Class Vehicle.

205.   Plaintiffs and the Putative Nationwide Class suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to

disclose material information. Had accurate information been disclosed, Plaintiffs and the Putative Nationwide Class who purchased the Putative Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

206.   As a result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Putative Nationwide Class have been harmed and suffered actual damages in that the Putative Class Vehicles' Veneer Wood Trim cracks over time, causing inconvenience, lowering the value of the Class Vehicles, and causing Putative Class Members to spend money to repeatedly repair or temporarily fix the recurring defect.

207.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Putative Nationwide Class have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience the Veneer Wood Trim Defect, for which there is no permanent fix. Even if Plaintiffs and Putative Class Members replace the trim with new, likely also defective, Veneer Wood Trim or an alternative interior trim, they've been forced to incur out-of-pocket expenses and simultaneously decreased the value of the Putative Class Vehicle.

208.   Defendants' violations present a continuing risk to Plaintiffs and

Putative Class Members. Defendants' unlawful acts and practices complained of herein affect the public interest, including but not limited to the fact that Defendants' Putative Class Vehicles with defective Veneer Wood Trim are still being bought and sold in the United States with a concealed defect.

209.   As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs and the Putative Nationwide Class have suffered injury-in-fact and/or actual damage.

210.   Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; attorneys' fees; and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

## COUNT EIGHT
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (BY PLAINTIFF BURZESE ON BEHALF OF THE PUTATIVE PENNSYLVANIA SUBCLASS)

211.   Plaintiff Burzese ("Plaintiff" for purposes of all Putative Pennsylvania Subclass counts), individually and for Putative Pennsylvania Subclass, hereby incorporates each and every allegation set forth above as though fully set forth herein.

212.   Plaintiff and Putative Pennsylvania Subclass Members purchased or leased their Putative Class Vehicles primarily for personal, family, or household

purposes within the meaning of 73 P.S. § 201-9.2.

213.   All of the acts complained of herein were perpetrated by Mercedes in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

214.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL") prohibits unfair or deceptive acts or practices, including: (1) "[r]epresenting that goods or services have … characteristics, …. benefits or quanties that they do not have"; (2) "[r]epresenting that goods or services are of a particular standard, quality or grade … if they are of another"; (3) "[a]dvertising goods or services with intent not to sell them as advertised"; and (4) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

215.   Defendants engaged in unlawful trade practices, including representing that Putative Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Putative Class Vehicles are of a particular standard and quality when they are not; advertising Putative Class Vehicles with the intent not to sell them as advertised; and engaging in other fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding.

216.   In the course of its business, Defendants knowingly sold the Putative Class Vehicles with the Veneer Wood Trim Defect and actively concealed that its

Veneer Wood Trim contained the defect, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Putative Class Vehicles that had the Veneer Wood Trim Defect.

217.    Defendants have known of the Veneer Wood Trim Defect for at least ten (10) years but concealed such knowledge and all the while it has touted the high resale value and quality of the Putative Class Vehicles.

218.    Defendants was also aware and consciously decided to value profits over its customers' satisfaction and enjoyment of the Putative Class Vehicles, and Defendants knew or should have known it was manufacturing, selling, and distributing vehicles throughout the United States that had an interior that would crack. Defendants concealed this information as well.

219.    In the course of Defendants' business, it willfully failed to disclose and actively concealed the Veneer Wood Trim Defect. By failing to disclose and by actively concealing the Veneer Wood Trim Defect and the true nature of the Veneer Wood Trim, by marketing its vehicles as having high resale value due to the superior

fit and finish of its interiors and the high quality of its interiors, by representing that trim defects were "taken care of," and by presenting itself as a reputable manufacturer that stood behind its vehicles (allegedly remedying defects) after they were sold, Defendants engaged in unfair and deceptive business practices in violation of the Pennsylvania UTPCPL.

220.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Putative Pennsylvania Subclass Members, about the true nature of the Veneer Wood Trim, the quality of the Mercedes brand, the devaluation of the Putative Class Vehicles due to the eventual expression of the latent defect, and the true value of the Putative Class Vehicles.

221.   Defendants intentionally and knowingly misrepresented material facts regarding the Putative Class Vehicles with an intent to mislead Plaintiff and Putative Pennsylvania Subclass Members.

222.   Defendants knew or should have known that their conduct violated the Pennsylvania UTPCPL.

223.   As alleged above, Defendants made material statements about the Veneer Wood Trim and the Mercedes brand that were either false or misleading.

224.   Mercedes owed Plaintiff and the Putative Pennsylvania Subclass

members a duty to disclose the true nature of the Class Vehicles, the devaluing of the Class Vehicles, and the integrity at Mercedes, as noted in more detail above, because Defendants:

   a) Possessed exclusive knowledge of the Veneer Wood Trim Defect and that it was manufacturing, selling, and distributing vehicles throughout the United States that had a latent defect;

   b) Intentionally and actively concealed the foregoing from Plaintiff and Pennsylvania Subclass members; and/or

   c) Made incomplete representations about the Veneer Wood Trim in Putative Class Vehicles generally, and the Veneer Wood Trim Defect in particular, while purposefully withholding material facts from Plaintiff and Pennsylvania Subclass Members that contradicted these representations.

225.    Because of the Veneer Wood Trim Defect, the value of the Putative Class Vehicles has greatly diminished.

226.    Defendants' fraudulent selling of Putative Class Vehicles with the Veneer Wood Trim Defect was material to Plaintiff and Putative Pennsylvania Subclass Members.

227.    Plaintiff and Putative Pennsylvania Subclass Members suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information.

228.    Defendants had an ongoing duty to all Mercedes customers to refrain

from unfair and deceptive acts or practices under the Pennsylvania UTPCPL. All owners of Putative Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices that occurred in the course of Mercedes' business.

229.   Mercedes' violations present a continuing risk to Plaintiff and Putative Pennsylvania Subclass Members as well as to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

230.   As a direct and proximate result of Defendants' violations of the Pennsylvania UTPCPL, Plaintiff and Putative Pennsylvania Subclass Members have suffered injury-in-fact and/or actual damage.

231.   Defendants are liable to Plaintiff and Putative Pennsylvania Subclass Members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiff and Putative Pennsylvania Subclass Members are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT NINE
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, 815 ILCS § 505/1, ET SEQ.
### (BY PLAINTIFF MONILAW ON BEHALF OF THE PUTATIVE ILLINOIS SUBCLASS)

232.   Plaintiff Monilaw ("Plaintiff" for purposes of all Putative Illinois Subclass counts), individually and on behalf of the Putative Illinois Subclass, hereby incorporates each and every allegation as though fully set forth herein.

233.   Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact" in the conduct of trade or commerce.  815 ILCS § 505/2. The ICFA is to be liberally construed to effectuate that purpose.

234.   Plaintiff and the Putative Illinois Subclass Members are persons and consumers as defined in 815 ILCS § 505/1(c) and (e).

235.   The Putative Class Vehicles are merchandise as defined in 815 ILCS § 505/1(b).

236.   Defendants' misconduct took place in the course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

237.   Defendants violated the ICFA by failing to disclose and actively

concealing the Veneer Wood Trim Defect in the Putative Class Vehicles as described above.

238.   By the acts and conduct alleged herein, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices as defined by 815 ILCS § 505/2 including representing that Putative Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Putative Class Vehicles are of a particular standard and quality when they are not; advertising Putative Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive and confuse as to the quality and nature of the Veneer Wood Trim, including whether it had a defect.

239.   The foregoing acts caused Plaintiff and the Putative Illinois Subclass Members to purchase the Putative Class Vehicles and to pay a premium price for the Putative Class Vehicles, which they would not have done had the true facts been known.

240.   Defendants, at all relevant times, knew or should have known that Plaintiff and the Putative Illinois Subclass Members did not know and could not have reasonably discovered their deceptive and unfair acts.

241.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Putative Illinois Subclass Members sustained damages.

242.   Plaintiff  and  Putative  Illinois  Subclass  Members  suffered  an ascertainable loss as a result of Defendants' conduct in that they paid more for the Putative Class Vehicles than they would have paid had they known the truth about the Putative Class Vehicles and/or paid out-of-pocket costs relating to the Veneer Wood Trim Defect. These injures are the direct and natural consequences of Defendants' misrepresentations and omissions.

243.   On behalf of herself and the Putative Illinois Subclass Members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover statutory and actual damages, punitive damages, attorneys' fees and costs, and all other relief allowed under the ICFA.

## COUNT TEN
### VIOLATION OF THE ILLINOIS
### UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 ILL. COMP. STAT. § 510/2, *ET SEQ.*
### (BY PLAINTIFF MONILAW ON BEHALF OF THE PUTATIVE ILLINOIS SUBCLASS)

244.   Plaintiff Monilaw, individually and on behalf of the Putative Illinois Subclass, hereby incorporates each and every allegation as though fully set forth herein.

245.   The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. § 510/2, et seq., prohibits deceptive trade practices.

246.   The Illinois UDTPA provides in pertinent part that a "person engages

in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; (9) advertises goods or services with intent not to sell them as advertised . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS § 510/2.

247.   Defendants engaged in unfair and deceptive acts in violation of the Illinois UDTPA when they engaged in the acts and conduct alleged herein, including representing that Putative Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Putative Class Vehicles are of a particular standard and quality when they are not; advertising Putative Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive and confuse as to the quality and nature of the Veneer Wood Trim, including whether it had a defect.

248.   Defendants, at all relevant times, knew or should have known that Plaintiff and the Putative Illinois Subclass Members  did not know and could not have reasonably discovered their deceptive and unfair acts.

249.  Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States and were directed at consumers.

250.  Defendants' deceptive acts proximately caused actual injury and damage to Plaintiff and the Putative Illinois Subclass Members at the time of purchase.

251.  Plaintiff and Putative Illinois Subclass Members suffered an ascertainable loss as a result of Defendants' conduct in that they paid more for the Putative Class Vehicles than they would have paid had they known the truth about the Putative Class Vehicles and/or paid out-of-pocket costs relating to the Veneer Wood Trim Defect. These injures are the direct and natural consequences of Defendants' misrepresentations and omissions.

252.  Defendants intended Plaintiff and the Putative Illinois Subclass Members to rely on their deceptive acts when purchasing the Putative Class Vehicles.

253.  On behalf of herself and the Putative Illinois Subclass Members, Plaintiff seeks to enjoin the unlawful acts and practices described herein and to recover attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request an order and judgment against Defendants which –

a.  Certifies the Class and Subclasses and appoints Plaintiffs and their counsel to represent the Class and respective Subclasses.

b.  Grants declaratory judgment to Plaintiffs and the Class.

c.  Enjoins Defendants from doing the wrongs alleged.

d.  Grants compensatory relief to Plaintiffs and the Class in the utmost amount allowed by law.

e.  Awards punitive damages against Defendants in favor of Plaintiffs and the Class in the utmost amount allowed by law.

f.  Awards reasonable attorneys' fees and costs to Plaintiffs and the Class, as prescribed by law and for the common and public good obtained in this action.

g.  Grants such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the Putative Class hereby demand a trial by jury on all issues.

Dated: <u>February 9, 2024</u>        Respectfully submitted,

*/s Taylor C. Bartlett*
Taylor C. Bartlett (GA Bar No. 778655)
Email: taylor@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332


                Keith T. Vernon (*pro hac vice* forthcoming)
                **TIMONEY KNOX, LLP**
                1717 K Street NW, Suite 900
                Washington, DC 20006
                Phone: (202) 349-9864
                Fax: (215) 540-2643
                Email: kvernon@timoneyknox.com

                Andrew W. Knox (*pro hac vice*
                forthcoming)
                **TIMONEY KNOX, LLP**
                400 Maryland Drive
                Fort Washington, PA  19034
                Phone: (215) 646-6000
                Facsimile: (215) 540-2643
                Email: aknox@timoneyknox.com

                Andrea R. Gold (*pro hac vice* forthcoming)
                Allison Parr (*pro hac vice* forthcoming)
                **TYCKO & ZAVAREEI LLP**
                2000 Pennsylvania Avenue, NW
                Suite 1010
                Washington, DC 20006
                Phone: (202) 973-0900
                Facsimile: (202) 973-0950
                Email: agold@tzlegal.com

Email: aparr@tzlegal.com

Troy M. Frederick (*pro hac vice* forthcoming)
Beth A. Frederick (*pro hac vice* forthcoming)
**FREDERICK LAW GROUP PLLC**
836 Philadelphia Street
Indiana, Pennsylvania 15701
Phone: (724) 801-8555
Fax: (724) 801-8358
Email: TMF@FrederickLG.com
Email: BAF@FrederickLG.com

*Attorneys for Plaintiffs and Putative Class*