IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER MONILAW, et al.,

     Plaintiffs,

          v.

MERCEDES BENZ GROUP AG, f/k/a
Daimler AG, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-00608-TWT

## OPINION AND ORDER

This is a putative class action. It is before the Court on Defendants Mercedes Benz Group AG ("MB Group") and Mercedes Benz USA, LLC's ("MB USA") Motion to Dismiss [Doc. 53]. For the reasons set forth below, Defendants MB Group and MB USA's Motion to Dismiss [Doc. 53] is GRANTED in part and DENIED in part.

## I.    Background[1]

This action arises from a purported defect in the veneer wood trim in six models of Mercedes-Benz vehicles between 2013 and 2022. Eleven Plaintiffs, on behalf of themselves and a putative class, allege that Defendants MB Group and MB USA (collectively "Mercedes") knew or should have known about the alleged defect, concealed its existence, and refused to remedy the problem.

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

(Am. Compl. ¶¶ 7–9 [Doc. 45].) The Plaintiffs describe the defect as a cracking of the wood trim over time, (*id.* ¶¶ 49–50), and they attach photos in their Amended Complaint of such cracking, (*see, e.g.*, ¶¶ 77, 90, 99, 111). Based on this cracking, the Amended Complaint alleges the following common law and statutory counts: breach of express warranty (Count I); breach of implied warranty (Count II); equitable and injunctive relief (Count III); violation of the Magnuson-Moss Warranty Act (Count IV); unjust enrichment (Count V); fraud and suppression (Count VI); and violations of the state laws of Georgia (Counts VII–VIII), Pennsylvania (Count IX), Illinois (Counts X–XI), Texas (Count XII), Massachusetts (Count XIII), New Jersey (Count XIV), Wisconsin (Count XV), Florida (Count XVI), and South Carolina (Count XVII–XVIII). The Amended Complaint also seeks to establish a putative class of "consumers who purchased or leased" certain Mercedes vehicles in each of the nine relevant states. (*Id.* ¶ 235.)

The Defendants presently seek to dismiss the Amended Complaint for failure to (1) establish standing as to certain putative class members and as to the equitable relief sought, (2) distinguish between the acts of each Defendant, and (3) state a claim as to almost all its claims. In their response brief, the Plaintiffs conceded the dismissal of the following claims: breach of express warranty (Count I), breach of implied warranty (Count II), violation of the Magnuson-Moss Warranty Act (Count IV), and violation of New Jersey's

Consumer Fraud Act (Count XIV). (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, [Doc. 55], at 2 n.1.) The Court therefore does not further address these abandoned claims.[2]

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6)

---

[2] The Court construes the Plaintiffs' abandonment as a request for leave to amend the Amended Complaint to omit and withdraw the conceded counts pursuant to Rule 15, which the Court grants. *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) ("There are multiple ways to dismiss a single claim without dismissing an entire action. The easiest and most obvious is to seek and obtain leave to amend the complaint to eliminate the remaining claim, pursuant to Rule 15."). This Order effectuates this amendment such that the Plaintiffs shall not be required to docket a Second Amended Complaint in order to conform the pleadings to the directives of this Order. *See Silver Comet Terminal Partners, LLC v. Paulding Cnty. Airport Auth.*, 2023 WL 2988443, at *9–10 (11th Cir. Apr. 18, 2023) (per curiam).

3

motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the

4

benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

Where a complaint alleges fraud, as here, it must additionally satisfy Rule 9(b)'s heightened pleading standard. Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is often framed as the "who, what, when, where, and how" of the alleged fraud. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). Notably, the requirement does not extend to "[m]alice, intent, knowledge, and other conditions of a person's mind," which "may be alleged generally." Fed. R. Civ. P. 9(b); *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025). And the requirement may be relaxed where evidence of the fraud is "uniquely held by the defendant." *Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1279 (N.D. Ga. 2024) (citations omitted); *see also Hill v. Morehouse Med. Assocs., Inc.*, 2003 WL 22019936, at *3–4 (noting, however, that the mere "difficulty" of obtaining information "as a corporate outsider [is]

5

not sufficient to justify relaxing Rule 9(b)'s pleading standard" (citation omitted)).

## III.   Discussion

### A. Standing

Article III extends the judicial power of federal courts only to "cases" and "controversies" between parties. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, §§ 1–2). To ensure that federal courts adjudicate only "cases" and "controversies," a plaintiff must establish that he or she has standing to sue by showing:

> (1) [he or she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Standing is a "threshold jurisdictional question" that the Court must address before all other questions. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007) (quotation marks and citations omitted). In a putative class action, at least one named plaintiff must have standing as to each claim asserted. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

### 1.  Claims by Absent Class Members

The Defendants contend that the Named Plaintiffs lack standing to assert claims for vehicles they never owned or leased. The vehicles in the putative class include the Mercedes ML, GL, GLE, GLS, GLC, and GLK models between 2013 and 2022. (Am. Compl. ¶ 5 (referring to these models as "Putative Class Vehicles").) The Defendants point out that none of the Named Plaintiffs owned or leased a GL or GLK model nor any vehicle from 2019 through 2022. (Br. in Supp. of Defs.' Mot. to Dismiss, [Doc. 53-1], at 6–7.) They thus ask this Court to dismiss the Amended Complaint to the extent it asserts claims for vehicle models and model years solely on behalf of absent class members.

The Court finds that this issue is better considered at the class certification stage. Here, the Named Plaintiffs clearly allege individual standing as to the vehicle models and model years they owned or leased— which is not disputed—and they allege that the trim is the same across all vehicles in the putative class:

> The Veneer Wood Trim is the same product across each Putative Class Vehicle. The Ve[ne]er Wood is made of the same material, manufactured in the same way, and is supplied by the same supplier. The only difference between the Veneer Wood Trim on different models of each Putative Class Vehicle is the size of the Veneer Wood Trim. The size has no affect on the Veneer Wood Trim defect as the defect remains the same across each Putative Class Vehicle.

(Am. Compl. ¶ 3.) Accordingly, whether the Named Plaintiffs can allege claims

7

on behalf of other putative class members with different vehicle models and model years is a question of typicality under Rule 23(a)—whether the Named Plaintiffs' claims are typical of the putative class as a whole. Courts in this district have routinely reached the same conclusion. *See, e.g.*, *Sowa*, 764 F. Supp. 3d at 1251–52 (noting that courts may "defer ruling on certain standing objections until class certification, where certification issues are logically antecedent to Article III concerns" (citation modified)); *Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 3972987, at *4–5 (N.D. Ga. Aug. 27, 2024); *Hadjian v. Mercedes-Benz, USA, LLC*, 2022 WL 3699603, at *5 (N.D. Ga. Mar. 31, 2022); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1283–84 (N.D. Ga. 2018). Therefore, the Court denies the Defendants' Motion to Dismiss for lack of standing as to vehicle models and model years not owned or leased by the Named Plaintiffs.

### 2. Equitable Relief (Count III)

As part of Article III's injury-in-fact requirement, a party seeking injunctive or declaratory relief must "allege[ ], and ultimately prove[ ], a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *J W ex rel. Walliams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (per curiam) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)); *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[T]he injury-in-fact requirement insists that a plaintiff

'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" (citation omitted)). "Although 'past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury,' '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (alteration in original) (first citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); and then citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

Here, the Plaintiffs seek various forms of equitable relief,[3] including injunctive relief to replace the wood trim in all putative class vehicles, refund "the difference in value between a non-defective and defective vehicle," and prevent the Defendants' alleged "wrongful acts and practices." (Am. Compl. ¶ 279.) To support their request for equitable relief, the Plaintiffs allege that

---

[3] The Plaintiffs seek equitable relief "in addition to" or "in the alternative" to damages, (Am. Compl. ¶ 274), but the Court construes this request as solely one in the alternative. As the Defendants point out, equitable relief does not lie where an adequate remedy at law exists, such as damages. (Br. in Supp. of Defs.' Mot. to Dismiss, at 18–19; Reply Br. in Supp. of Defs.' Mot. to Dismiss, [Doc. 56], at 21.) However, parties may plead for "alternative or different types of relief." FED. R. CIV. P. 8(a)(3); *see also Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief.").

the cracking is a latent defect that will manifest in the future (or continue to manifest) in their existing vehicles, (*id.* ¶ 273); that their vehicles will subsequently "suffer [a] decline in value" absent injunctive relief, (*id.* ¶ 276); that future repairs to the trim will use replacement parts that are also defective, (*id.* ¶ 274); that they would pay to replace the trim if the replacement parts were not defective, (*id.* ¶ 275); and that they "are likely to buy another Mercedes vehicle with Veneer Wood Trim, if Defendants were to repair" the trim, as "47.8% of Mercedes owners purchased another Mercedes when buying a new car, (*id.* ¶ 277).

The Defendants argue that the Plaintiffs lack standing to seek equitable relief because "their allegations of likely future harm are speculative." (Br. in Supp. of Defs.' Mot. to Dismiss, at 18–19.) According to the Defendants, the Plaintiffs' allegations that they are "likely" to buy another Mercedes vehicle with defective trim "if" the Defendants repair the trim is merely speculative. (Br. in Supp. of Defs.' Mot. to Dismiss, at 19 (emphasizing the conditional nature of this allegation).) The Defendants additionally argue that the Plaintiffs "now are aware of the alleged wood trim issue" and "can no longer claim to be 'deceived'" into buying another Mercedes. (*Id.*)

The Court ultimately holds that the Plaintiffs have standing to seek equitable relief. Although the Court agrees that the Plaintiffs' allegations regarding the likelihood of buying another Mercedes are speculative, the

Plaintiffs' other allegations of future harm are sufficient. Specifically, the Plaintiffs allege that the cracked trim is a latent defect that will continue to manifest over time in presently unaffected panels of trim and cause future decline in the value of the Plaintiffs' existing vehicles. (Am. Compl. ¶ 273 ("[M]any Plaintiffs have only experienced a manifestation of the Veneer Wood Trim Defect on certain panels but they will experience the Defect on all panels at some point in the future.").) These allegations speak to "continuing, present adverse effects" from the Defendants' past conduct. *See Wooden*, 247 F.3d at 1284 (citations omitted). This Court and others have relied on similar allegations to find standing for equitable relief. *See, e.g.*, *Bolling*, 2024 WL 3972987, at *6 (finding standing for equitable relief based on allegations that a latent defect existed and that replacement parts would be subject to the same defect, though involving the shattering of a glass sunroof rather than a cosmetic issue like cracked trim); *Ford v. Hyundai Motor Am.*, 709 F. Supp. 3d 1067, 1079–80 (C.D. Cal. 2024) (finding the same due to allegations of "future cracks in the[ ] windshields of [Plaintiffs'] existing vehicles, unless Defendants repair, recall, and/or replace their vehicles."); *Xu v. Porsche Cars N. Am., Inc.*, 2020 WL 13892590, at *17 (N.D. Ga. Nov. 30, 2020) (finding the same due to an alleged "persistent" defect in certain vehicles); *Peckerar v. Gen. Motors, LLC*, 2020 WL 6115083, at *4–5 (C.D. Cal. Aug. 17, 2020) (finding the same due to allegations that a vehicle had a defect and that "numerous other drivers

11

ha[d] experienced the same or worsening defect").

### B. Shotgun Pleading

The Defendants ask this Court to dismiss the Amended Complaint as an impermissible "shotgun pleading." (Br. in Supp. of Defs.' Mot. to Dismiss, at 8–9.) Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A "shotgun pleading" is a pleading that violates this rule by failing "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). Here, the Defendants argue that the Amended Complaint is a shotgun pleading because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (Br. in Supp. of Defs.' Mot. to Dismiss, at 8 (alteration in original) (citing *Weiland*, 792 F.3d at 1323); *see also id.* at 9 ("[N]early every substantive allegation is made as to 'Defendants' or 'Mercedes' generally.").)

The Court concludes that the Amended Complaint is not a shotgun pleading. A complaint that collectively refers to multiple defendants, as is the case here, is not automatically a shotgun pleading. *Bolling*, 2024 WL 3972987, at *7 (quoting *1-800-411-I.P. Holdings, LLC v. Ga. Injury Ctrs., LLC*, 71 F.

Supp. 3d 1325, 1330 (S.D. Fla. 2014)). The Defendants are related: Defendant Mercedes Benz USA, LLC is a wholly owned subsidiary of Defendant Mercedes Benz Group AG. (Am. Compl. ¶ 25.) That the Plaintiffs cannot yet explain the "exact corporate structure and degree of each Defendant's involvement[ ] at this stage in the litigation and prior to discovery" is not a reason to dismiss the Amended Complaint at this time. *Bolling*, 2024 WL 3972987, at *7 (quotation marks and citation omitted); *see also id.* ("Plaintiffs are likely to experience difficulty in obtaining information regarding Defendants' internal policies." (citation omitted)). It is difficult for Plaintiffs to obtain this kind of information prior to discovery given that such internal information likely rests solely in the Defendants' hands, *id.* at *7, and the Plaintiffs have pleaded such already, (*see, e.g.*, Am. Compl. ¶ 224 ("Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the . . . individuals at Mercedes responsible for disseminating . . . information regarding the Putative Class Vehicles. Mercedes necessarily is in possession of, or has access to, all this information.")). Therefore, the Court declines to dismiss the Amended Complaint on shotgun pleading grounds.

### C.  Choice of Law

The Plaintiffs plead both common law and state statutory claims. Before proceeding to those claims, the Court addresses choice of law. The Court will apply the relevant state laws for each state statutory claim, but it is less clear

what law should apply to the Plaintiffs' two common law claims (fraudulent concealment and unjust enrichment). The parties do not expressly discuss choice of law.

The Court clarifies that it will apply Georgia law to the common law claims in this action. Federal courts under diversity jurisdiction apply the choice-of-law rules of the state in which they sit. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) (citations omitted). Accordingly, this Court applies Georgia's choice-of-law rules. In Georgia, courts ordinarily apply the law of the state where the tort was committed for tort claims (*lex loci delicti*) and the law of the state where a contract was made for contract and quasi-contract claims (*lex loci contractus*). *In re Martin*, 532 B.R. 859, 865 (N.D. Ga. 2015) (citations omitted).

However, one odd exception to these rules is that "Georgia courts do not apply other states' common law" and instead "apply only the statutory law of other states." *Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 823 F. App'x 815, 822 (11th Cir. 2020) (per curiam) (citing *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983)). In other words, even if a tort was committed in another state, Georgia courts do not apply the substantive law of that state unless codified in statute. *Id.*

The Georgia Supreme Court re-affirmed this common law exception relatively recently in *Coon v. Medical Center, Inc.*, 300 Ga. 722, 728–35 (2017).

14

There, the plaintiff alleged that a tort was committed in Alabama and sought to apply Alabama common law under *lex loci delicti*, but the Georgia Supreme Court applied Georgia law under the common law exception. *Id.* at 727–29. The Georgie Supreme Court reasoned that it had adhered to the traditional exception "in a nearly unbroken line of decisions" dating back to the 1800s and declined to depart now. *Id.* at 731 (collecting cases); *see also id.* at 733 ("The approach Georgia has followed from the beginning as to common-law questions provides a workable rule, and [the Plaintiff] has not persuaded us that a much better rule has come along."). This is despite the fact that the underlying reasoning behind the exception—that the common law is the same across all states such that Georgia courts need not be bound by the interpretation of any other state—no longer reflects our present reality. *Id.* at 730 ("This approach may seem anachronistic . . . . But the prevailing view at the time the doctrine was established was that there is one common law that can be properly discerned by wise judges, not multiple common laws by which judges make law for their various jurisdictions."). Georgia is the only state that applies an exception of this kind, attracting criticism on the subject. *See generally, e.g.*, Gary J. Simson, *An Essay on Illusion and Reality in the Conflict of Laws*, 70 Mercer L. Rev. 819 (2019); Joanna B. Apolinsky & Jeffrey A. Van Detta, *The Antebellum Iron of Georgia's Disguised Lex Fori Doctrine: O Where Have You Gone, Brained Currie?*, 50 Cumb. L. Rev. 407 (2020).

"Even though Georgia courts stand alone in following this century-old, controversial choice-of-law practice, the Court is nevertheless constrained to follow it." *Sowa*, 764 F. Supp. 3d 1233, 1258 (N.D. Ga. 2024) (citation modified) (quoting *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484, at *4 (N.D. Ga. Feb. 10, 2022)). *But see McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1367–72 (N.D. Ga. 2013) (applying the common law of other states to a fraudulent concealment claim). Here, because the Plaintiffs have identified no state statutes to which this Court must look, the Court "appl[ies] the common law as developed in Georgia rather than foreign case law."[4] *Frank Briscoe*, 713 F.2d at 1503; *Monopoli*, 2022 WL 409484, at *4 (quoting *Coon*, 300 Ga. at 729–33); *see also Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 F. App'x 270, 277–78 (11th Cir. 2021) (citations omitted)); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 679 (N.D. Ga. 2003) (applying Georgia law

---

[4] Because of the historical nature of Georgia's unique exception, there is some confusion over whether it "applies to common law claims that arise in *all* states, or only those where 'the other state was one of, or formed from the territory of one of, the original 13 colonies that inherited the common law of England." *Sowa*, 764 F. Supp. 3d at 1257–58 (citing *Coon*, 300 Ga. at 731 n.5). Following in *Sowa*'s footsteps, the Court applies the exception to all state subclasses in the present litigation. *Sowa*, 764 F. Supp. 3d at 1258 (applying the exception to all state subclasses because the Georgia Supreme Court had applied the exception to Florida on at least one occasion). The Georgia Supreme Court and Eleventh Circuit have declined to expressly address this question. *Coon*, 300 Ga. at 731 n.5 (declining to address the question after finding it sufficient that "Alabama was formed predominantly from the territory of Georgia"); *Nationwide*, 823 F. App'x at 823 n.3 (declining to address the question as the argument was raised for the first time in reply).

where "the parties have not directed the Court's attention to statutes of foreign states"). The Court therefore applies Georgia law to the Plaintiffs' fraudulent concealment and unjust enrichment claims.

## D. Fraudulent Concealment (Count VI)

In Georgia, fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Meyer v. Waite*, 270 Ga. App. 255, 257 (2004) (quotation markcitation omitted). Where a plaintiff alleges fraud by the omission of a material fact, the plaintiff must additionally allege a duty to disclose the omitted information. *Ledford v. Smith*, 274 Ga. App. 714, 721 (2005) ("[T]he [s]uppression of a material fact is fraud only if there is a duty to disclose . . ." (second alteration in original) (quotation marks and citation omitted)). The Defendants contend that they did not misrepresent any facts (misrepresentation) or possess a duty to disclose any omitted information (omission); they did not possess knowledge of the defect (scienter), and the Plaintiffs did not justifiable rely on any supposed misrepresentations (justifiable reliance).[5] The Court holds below that the Plaintiffs satisfy the first

--------

[5] The Defendants request dismissal of many of the state statutory claims for failure to allege these same elements. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 27 n.6 (failure to allege an actional misrepresentation or omission); *id.* at 28 n.7 (failure to allege a duty to disclose); *id.* at 32 n.8 (failure

element via omission but not misrepresentation and that they satisfy the scienter element. Having found no misrepresentation of fact on which the Plaintiffs could rely, the Court does not reach the Defendants' justifiable reliance argument.

### 1. Misrepresentation or Omission

The Plaintiffs contend that they satisfy this first element of fraudulent concealment because they plead with particularity both (2) a misrepresentation and (2) the omission of a material fact that the Defendants had a duty to disclose. As explained below, the Plaintiffs do not sufficiently plead fraudulent concealment via misrepresentation (active concealment) but do sufficiently plead fraudulent concealment via the omission of a material fact that the Defendants had a duty to disclose (passive concealment).[6]

#### a. Misrepresentation

To support their allegations of misrepresentation, the Plaintiffs point to representations in (1) general Mercedes marketing and advertisements, (2) certified pre-owned vehicle materials, (3) "Vehicle Care Guides," and (4) warranty booklets. The marketing materials describe Mercedes vehicles in

---

to allege scienter).) Unless stated otherwise, the Court notes that the state statutory claims survive to the same extent this common law claim does.

[6] The Defendants' reply brief suggest that the Plaintiffs "have disavowed" any passive concealment claim, (*see* Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 12), but the Court does not read the Plaintiffs response brief as doing so.

at least the following ways: "state-of-the-art," "luxury," "perfection," "fascination," "the most advanced vehicles on the road," having "fine craftsmanship" and "luxurious interiors," offering "[t]he best or nothing," and evoking an "emotional experience" based on "visual presence." (Am. Compl. ¶¶ 189, 192–93.) For certified pre-owned vehicles, the Defendants represent that each vehicle undergoes a "rigorous" inspection that includes evaluating the trim and marking whether it is "OK," (*id.* ¶ 305), and represent that each is "a clean-skinned beauty . . . with high quality fit and finish, inside and out," (*id.* ¶ 195). The Vehicle Care Guide additionally states that "every visible surface has been crafted with the finest materials and coatings to ensure the best appearance and durability." (*Id.* ¶ 193.) Lastly, the Plaintiffs point to the vehicles' express warranty policy, as it supposedly "warrant[s]" that the vehicles, including their trim, are "free of defects in materials and workmanship at the time of purchase or lease." (*Id.* ¶ 55.)

Each of these four types of representations are insufficient to establish fraud via misrepresentation. Beginning with the general marketing representations, the Court concludes that these representations are mere "puffery," not fraudulent misrepresentation. *See Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) ("Statements made to puff goods are not actionable in misrepresentation even if untrue . . ." (citations omitted)). Puffery entails "generalized, vague, nonquantifiable statements" that a

company may use to sell its products; they are not meant to be representations of fact. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019) (noting that puffery implicates the justifiable reliance element of fraud as well, as the "general idea" is "that some statements are just too boosterish to justify reasonable reliance"). The phrases cited by the Plaintiffs in this case (e.g., being "the best" and having "luxurious interiors" and "fine craftsmanship") can be fairly characterized as such. *See Brown v. Sirchie Acquisition Co.*, 2017 WL 4082690, at *7 (N.D. Ga. Feb. 17, 2017) ("[I]t is not a fraudulent misrepresentation for [ ] manufacturers to claim that their particular product is 'the best,' or provides the 'most comprehensive' benefits.").

Other decisions by Georgia courts support this conclusion. In *Sheffield v. Darby*, 244 Ga. App. 437 (2000), for example, the Georgia Court of Appeals characterized a statement that a horse had "no problems" as puffery and likened it to saying a vehicle was in "A-1 condition" or a building was "of excellent construction" (both of which were held in other Georgia cases to be puffery). *Id.* at 439 (citations omitted). By contrast, in *McClure v. Toyota Motor Corp.*, 759 F. Supp. 3d 1333 (N.D. Ga. 2024), a court in this district considered an alleged defect in which the vehicle's battery would drain while it was turned off and prevent the vehicle from starting. *Id.* at 1341. The court there found the following two representations actionable because they spoke to underlying facts about the battery's durability and reliability: "the typical battery life of

the Class Vehicles is 3–5 years" and "just press the Push Button Start and you're ready to go." *Id.* at 1356.

Similarly, the certified pre-owned and Vehicle Care Guide representations are also puffery. Determining whether Mercedes provided a "high quality fit and finish" as a "cleaned-skinned beauty," used the "finest materials and coatings," or achieved the "best appearance and durability" is a subjective inquiry. *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) (per curiam) (holding that describing a company's performance as "strong" is puffery because it "is not the sort of empirically verifiable statement that can be affirmatively disproven, as it is inherently a label expressive of, and generated by, opinion"). *But see Pinon v. Daimler AG*, 2019 WL 11648560, at *15 (N.D. Ga. Nov., 4, 2019) (finding Vehicle Car Guide language identical to the present case actionable when combined with additional language regarding the specific paint technology used). And the Plaintiffs do not point to much else from the certified pre-owned materials or Vehicle Care Guide. (*See* Am. Compl. ¶ 305 (noting that inspection reports for certified pre-owned vehicles indicate whether the trim is "OK," though not specifying further the meaning of this seemingly broad designation); *id.* ¶ 185 (explaining that the guide also makes the vague statement that each vehicle's "appearance" is a "main component of its high resale value").)

Lastly, the Court finds that the Amended Complaint misstates the

representations of the warranty booklet; they plainly do not represent that the vehicles will be "free of defects" without qualification. The Defendants have attached the warranty booklets for the relevant model years (2013–2022) as Exhibits A through J of their Motion to Dismiss.[7] Each booklet appears to state that the vehicles are "free of defects" only within certain limited parameters that have no relevance to the trim, such as being free of defects that would cause the vehicles to violate the Federal Clean Air Act or other emissions standards. (*See, e.g.*, Br. in Supp. of Defs.' Mot. to Dismiss, Ex. A, at 19 [Doc. 53-2] ("[T]he vehicle is free from defects in materials and workmanship at the time of sale which would cause [the vehicle] not to conform with [federal Clean Air Act] regulations within a period of two years or 24,000 miles from the date of initial operation of the vehicle . . .").) Moreover, the warranty booklets for model years 2017 through 2022 expressly state: "This warranty does not mean that your vehicle is free from defects." (*See, e.g.*, Br. in Supp. of Defs.' Mot. to Dismiss, Ex. E, at 11 [Doc. 53-6].) As the Defendants point out, each warranty booklet also states that an "authorized Mercedes-

---

[7] Courts ordinarily cannot consider a document outside the pleadings on a motion to dismiss. Fed. R. Civ. P. 12(d). However, the Eleventh Circuit has held that courts may do so if the document is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Here, the warranty booklets are central to the Plaintiffs' claims, and neither party disputes their authenticity.

Benz Center will . . . correct defects in material or workmanship" but only if they "aris[e] during the warranty period." (*See, e.g.*, Br. in Supp. of Defs.' Mot. to Dismiss, Ex. A, at 11.) None of these warranty representations are equivalent to the unqualified statement that the vehicles will be "free of defects." Therefore, the Court will not treat the warranty booklets as a source of misrepresentation at this time.

Given that the Court finds no false representation of fact in the materials cited by the Amended Complaint, the Plaintiffs cannot pursue a claim for fraudulent concealment through misrepresentation (active concealment). The Court next turns to whether the Plaintiffs' allegations of fraudulent concealment through omission (passive concealment) survive.

### b. Omission

To support their allegations of omission, the Plaintiffs allege that the Defendants owed a duty to disclose the alleged defect, (Am. Compl. ¶¶ 225, 228), but failed to do so at any time, (*id.* ¶ 213 (alleging that the Defendants failed to disclose the defect "at and after the time of purchase, lease, and/or service"); *see also id.* ¶ 232(d) (describing the Defendants' failure to mention the cracking trim in the owner's manual, other documents, or marketing materials)). The Court accepts as true that the Defendants failed to disclose the cracking, which would qualify as a material fact if shown to be a defect. The only remaining question is whether the Defendants had a duty to disclose

23

the alleged defect.

In Georgia, a duty to disclose "may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. Thus, a duty to disclose may exist even without a confidential relationship if the particular circumstances of the case create the duty. *See Monopoli*, 2022 WL 409484, at *11–12. "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.'" *McCabe*, 948 F. Supp. 2d at 1368 (quoting *Rivers v. BMW of N. Am., Inc.*, 214 Ga. App. 880, 883–84 (1994)).

Based on the present allegations of concealment, the Court concludes that the Defendants owed the Plaintiffs a duty to disclose the defect. The Amended Complaint alleges that (1) the Defendants have "superior and extensive knowledge and expertise" regarding the manufacturing of Mercedes vehicles and associated wood trim, while the Plaintiffs lack any such knowledge or expertise, (Am. Compl. ¶ 228); (2) the Plaintiffs could not discover the alleged defect through reasonable diligence, as information related to the trim defect was in the Defendants' "exclusive control," (*see id.* ¶ 231); and (3) the Defendants concealed the alleged defect by "den[ying] any knowledge of[ ] or responsibility for" it "when consumers brought their

24

Putative Class Vehicles to Mercedes complaining" about the cracking," (*id.* ¶ 232(c)), and refusing to inform customers about it in any "document" or "communication," (*id.* ¶ 232(d)). Together, these allegations are sufficiently particular for the Court to find that the alleged cracking is an "intrinsic qualit[y]" that the Plaintiffs "by the exercise of ordinary prudence and caution could not discover" and that the Defendants were required to disclose. *See Amin*, 301 F. Supp. 3d at 1296 (holding the same under similar circumstances); *Monopoli*, 2022 WL 409484, at *11–12 (same); *Bolling*, 2024 WL 3972987, at *16 (same). Dismissal on duty-to-disclose grounds is thus inappropriate at this time, and the Plaintiffs' passive concealment claim survives the present Motion to Dismiss.

### 2. Scienter

The Court finds that Plaintiffs' allegations of scienter sufficient to survive a Motion to Dismiss. While the elements of fraud must ordinarily be alleged with particularity, Rule 9(b) specifies that the element of knowledge can be alleged "generally." FED. R. CIV. P. 9(b). The Amended Complaint has done this.

The Plaintiffs allege that Mercedes knew or should have known about the alleged trim defect for four reasons: (1) pre-sale testing, (2) direct complaints, (3) repair data, and (4) public online forums. While the types of pre-sale tests performed and their results are in the Defendants' exclusive

control, the Plaintiffs list various weathering, physical, mechanical, and chemical tests that automakers typically conduct and that Mercedes is believed to have performed to some extent. (Am. Compl. ¶¶ 200–03) The Plaintiffs allege that such testing would have revealed the alleged defect. (*Id.* ¶ 203.) Second, the Plaintiffs allege that "many Putative Class Vehicle owners complained directly to Mercedes and Mercedes dealerships" about cracked trim. (*Id.* ¶ 207.) As a factual basis for this claim, they point to an online message board on https://mbworld.org in which a user reported the issue to a local dealership and to MB USA. (*Id.* ¶ 207.) Third, the Plaintiffs allege that the Defendants collect and analyze "detailed information about repairs made on vehicles at their dealerships and service centers," which would supposedly reveal—with the benefit of discovery—a "large number of inquiries" regarding defective trim. (*Id.* ¶¶ 208–09.) Fourth, the Plaintiffs allege that the Defendants track complaints on public online forums—such as https://www.benzworld.org, https://www.mercedesforum.com, and https:// mbworld.org—and would have learned about the alleged defect from those sites. (*Id.* ¶¶ 211–12.) The Amended Complaint contains, as an example, six comments made on such sites between 2005 and 2020. (*See, e.g., id.* ¶ 212 (showcasing a http://www.mbworld.org comment from 2015 stating that cracking "is a notorious problem with Mercedes wood").)

Taken together, these allegations plausibly suggest that the Defendants

had knowledge of the potential defect. They suggest that Mercedes conducted certain testing that would have revealed the defect, received direct complaints about the defect, received a "large number" of requests to replace cracked trim and collected data on this topic, and followed Mercedes-focused online forums that have identified the cracked trim as a "notorious" problem. This Court has relied on almost identical allegations to find scienter. *See, e.g., Bolling*, 2024 WL 3972987, at *15–16. Moreover, the Plaintiffs have alleged that the collected data regarding pre-sale testing, repairs, and other complains are all exclusively within the hands of the Defendants, (*see, e.g.*, Am. Compl. ¶ 203), easing the Court's decision to decline to dismiss the claim at this time.

### E. Unjust Enrichment (Count V)

A claim for unjust enrichment is based on the equitable doctrine that, where there is "no legal contract to pay," a party conferred a benefit still "ought to return or compensate for the conferred benefits." *Tolson Firm, LLC v. Sistrunk*, 338 Ga. App. 25, 31 (2016) (quoting *Bedsole v. Action Outdoor Advert. JV*, 325 Ga. App. 194, 200 (2013)). To state a claim for unjust enrichment, a plaintiff must allege

> that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.

*Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 778 (2020) (quoting

27

*Campbell v. Ailon*, 338 Ga. App. 382, 387 (2016)).

The Defendants seek dismissal of the unjust enrichment claim because the Plaintiffs (1) have an adequate remedy at law; (2) received the "benefit of their bargain," a vehicle to drive, even if they were unsatisfied with it; and (3) did not "confer[ ] a benefit" on either of the two Defendants. (Br. in Supp. of Defs.' Mot. to Dismiss, at 20–21.) The Court discusses each in turn.

First, the Plaintiffs may validly bring a claim for unjust enrichment now that they have agreed to dismiss their contract claims (their breach of warranty claims). The Defendants' initial arguments that an adequate remedy at law exists through contract is thus no longer relevant (and the Defendants do not appear to re-assert this argument in their reply brief).

Second, the Defendants argue that they were not unjustly enriched because the Plaintiffs received the "benefit of their bargain"—their vehicles. The Court disagrees with this characterization. While a claim for unjust enrichment does not lie in every buyer dissatisfied with a product, *see McAlexander v. Otsuka Am. Pharm., Inc.*, 2022 WL 17549788, at *9 (N.D. Ga. Aug. 18, 2022), the allegations here of a concealed defect are of importance. Taking as true that the cracked trim was a defect known to the Defendants but concealed from the world, the Court finds it plausible that the Defendants were unjustly enriched since the Plaintiffs allege they would not have bought the product had they known about this material fact—i.e., it was not clear that for

28

which they were bargaining. This is notwithstanding the fact that the Plaintiffs received and continued to use the product for some time.

Third, except for Plaintiff Eric Oblon, the Plaintiffs do not plausibly plead that they conferred a benefit on Defendants MB Group and MB USA in particular. The Defendants argue that no direct benefit was conferred on them because none of the Plaintiffs purchased their vehicles new from MG Group or MB USA and none repaired their trim with authorized new parts. (Br. in Supp. of Defs.' Mot. to Dismiss, at 20–21; Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 19–20.) This is true; the Plaintiffs do not allege they bought new vehicles from the Defendants or authorized trim replacements. Nevertheless, the Plaintiffs argue that purchasing used Mercedes vehicles still benefited the Defendants because (a) buying used Mercedes vehicles promotes the belief that the vehicles are luxurious and have a high resale value and thus allows the Defendants to sell their new vehicles at higher prices, and (b) buying "certified pre-owned" Mercedes vehicles generates revenue for the Defendants.[8] (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 11 (quoting Am. Compl. ¶ 292).)

------

[8] The Plaintiffs also allege that Mercedes is conferred a benefit when individuals buy authorized trim replacement parts. But the Court does not consider this alleged benefit because none of the Plaintiffs appear to plead that they purchased authorized replacement parts. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 21 n.5; *see also id.* (noting that only one Plaintiff even alleged that he replaced the trim).)

The Court disagrees with the Plaintiffs regarding the first alleged benefit but agrees regarding the second. The Court finds it implausible that MB Group and MB USA are conferred a benefit every time an individual buys a used Mercedes, even if the individual did so due to the vehicle's "luxury" and high resale value. The Plaintiffs' theory of conferred benefits is too tenuous here. The Plaintiffs do not allege sufficient facts to show that the act of buying used Mercedes vehicles allows the Defendants to charge higher prices on their new vehicles (and thus derive a benefit). It would appear just as likely that a large resale market pushes the price of new cars down. That being said, the Court is persuaded that an individual who specifically purchases a certified pre-owned vehicle does plausibly confer a benefit on MB Group and MB USA. Certified pre-owned vehicles must be bought from authorized Mercedes dealerships, suggesting that the Defendants generate revenue from this purchase. (*See* Am. Compl. ¶ 54.) Only Plaintiff Oblon alleges that he bought a certified pre-owned vehicle, (*id.* ¶ 152), so the Court must dismiss the unjust enrichment claim as to all other Plaintiffs.

### F.  State Consumer Fraud Statutes

#### 1.  Economic Loss Rule

The Defendants ask the Court to dismiss the three statutory tort claims as barred by the "economic loss rule." (Br. in Supp. of Defs.' Mot. to Dismiss, at 32–33.) These claims include Plaintiff Giovanni Garza's Texas claim

(Count XII), Plaintiffs Eric Oblon and John Yoakum's Florida claim (Count XVI), and Plaintiff Keneshia Wright's South Carolina claim (Counts XVII–XVIII). The economic loss rule precludes plaintiffs from recovering purely economic damages through tort law; in the product liability context, it generally precludes recovery in tort for losses stemming solely from the existence of defect (but not from any associated personal injury or property damage). *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (citation omitted); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017); *Harrell v. BMW of N. Am., LLC*, 517 F. Supp. 3d 527, 540 (D.S.C. 2021) ("[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'" (citation omitted)). The Court discusses each state claim below.

First, Texas recognizes a "fraud exception" to the economic loss rule. *See AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 401–02 (W.D. Tex. 2023). Under this fraud exception, Texas courts do not apply the economic loss rule where, as here, a defendant allegedly breaches an independent "legal duty not to fraudulently procure a contract." *Id.* at 402 (quotation marks and citation omitted) (declining to apply the economic loss rule to fraudulent concealment claims); *Sharyland*, 345 S.W.3d at 417 (same). The Court thus declines to dismiss the Texas statutory tort claim by way of the economic loss rule.

31

Second, Florida does not appear to recognize a fraud exception. Multiple Florida courts have applied the economic loss rule to fraudulent concealment claims as a result. *See, e.g.*, *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1198 (S.D. Fla. 2017) (surveying case law because Florida law did not seem clear on the question, but following the lead of four other Florida district courts in finding no fraud exception); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103–04 (S.D. Fla. 2019) (finding no fraud exception, and noting that Florida courts are concerned that such an exception would encourage plaintiffs to bring fraudulent concealment claims to avoid the economic loss rule); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1302 (S.D. Fla. 2017) (holding the same). Therefore, the Court dismisses the Florida statutory tort claim (Count XVI).

Third, it is unclear whether South Carolina recognizes a fraud exception, so the Court declines to dismiss the South Carolina statutory claim as barred by the economic loss rule at this time. At least two other district courts have determined that state law on the question is unsettled and similarly declined to dismiss the claim at the motion to dismiss stage. *See Harrell*, 517 F. Supp. 3d at 540; *Beau v. Kia Am., Inc.*, 2023 WL 11581105, at *10 (C.D. Cal. Nov. 29, 2023). *But see In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1308–09 (S.D. Fla. 2020) (holding that South Carolina does not recognize a fraud exception, based in part on an analysis of *Sapp v.*

*Ford Motor Co.*, 386 S.C. 143 (2009)).

### 2. Georgia (Counts VII–VIII)

The Defendants argues that this Court must dismiss Plaintiff Tameka Converson-Davis's (1) Georgia Fair Business Practices Act ("GFBPA") claim as time barred and (2) Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") claim for failure to "allege facts showing inadequate legal remedies and imminent future harm." (Br. in Supp. of Defs.' Mot. to Dismiss, at 33–34.)

First, the Court denies dismissal of the GPBPA claim. The GFBPA has a two-year statute of limitations, beginning when the plaintiff "knew or should have known of the occurrence of the alleged violation." O.C.G.A. § 10-1-401(a)(1). The Defendants argue that the statute of limitations began running in 2021 when Converson-Davis first discovered the cracking in her trim and ended in 2023, prior to the filing of the complaint in this action. (Br. in Supp. of Defs.' Mot. to Dismiss, at 33.) But the Court is persuaded that the statute of limitations did not begin running until Converson-Davis "knew or should have known" of the Defendants' alleged unfair or deceptive conduct (e.g., fraudulent concealment of a known defect), not merely when Converson-Davis discovered the cracking itself. Construing all facts in favor of the Plaintiffs, the Court cannot say that Converson-Davis learned about the Defendants' wrongful conduct more than two years prior to the filing of the Complaint. Thus, the

33

Court declines to dismiss the GFBPA claim as time barred at this time. *See Callen v. Daimler AG*, 2021 WL 4523436, at *5 (N.D. Ga. Oct. 4, 2021) (holding similarly); *Amin*, 301 F. Supp. 3d at 1291–92 (same).

Second, the Court denies dismissal of the GUDTPA claim. The only remedy available under the GUDTPA is injunctive relief. *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 644 (2002). The Plaintiffs have established a likelihood of future harm, as explained above, so injunctive relief under the GUDTPA is similarly available.

### 3. Pennsylvania (Count IX)

The Defendants ask the Court to dismiss Plaintiff Shannyn Burzese's Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") claim for "fail[ure] to allege justifiable reliance, and harm suffered as a result of that reliance." (Br. in Supp. of Defs.' Mot. to Dismiss, at 34.) The Plaintiffs argue that they need not plead justifiable reliance because they allege deception by omission. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 31–32 (citing *Halpern v. Ricoh U.S.A., Inc.*, 299 A.3d 1023, 1028 (Pa. Super. Ct. 2023)). In response, the Defendants argue that the Plaintiffs must still plead justifiable reliance in omission cases and, in any case, fail to plead a duty to disclose. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 14.)

The Court agrees with the Plaintiffs. The Amended Complaint alleges that the Defendants engaged in deceptive conduct by omission—failing to

disclose and concealing a known defect. (Am. Compl. ¶¶ 354–57.) In omission cases, Pennsylvania courts have held that a plaintiff need not plead justifiable reliance. *See, e.g.*, *Drayton v. Pilgrim's Pride Corp.*, 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004) ("Reliance can be presumed in this type of case, because a consumer must rely upon what the manufacturer discloses in order to make a purchasing decision."). Moreover, Pennsylvania courts have held that manufacturers like Mercedes have a duty to disclose "known latent defect[s]" to purchasers when it is alleged, as it is here, that "the purchaser is unsophisticated and does not have access to the same information as the manufacturer." *Id.* (quotation marks and citation omitted). The Pennsylvania claim therefore survives the present Motion to Dismiss.

### 4. Illinois (Counts X–XI)

The Defendants seek dismissal of Plaintiffs Jennifer Monilaw and David Simcich's Illinois Consumer Fraud and Deceptive Trade Practice Act ("ICFDTPA") and Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") claims as time barred. (Br. in Supp. of Defs.' Mot. to Dismiss, at 34–35.) Both claims have a three-year statute of limitations. *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 2013 WL 6632741, at *4 (N.D. Ill. Dec. 16, 2013). The Defendants appear to contend that the statute of limitations begins running upon the discovery of the cracked trim. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 35.) As with the Georgia statutory claims, however, it is not the

35

mere discovery of the cracked trim that begins the statute of limitations. (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 32.) Construing all facts in favor of the Plaintiffs, the Court cannot say that the Plaintiffs here learned about the Defendants' wrongful conduct more than three years prior to the filing of the Complaint. Thus, the Court declines to dismiss the Illinois statutory claims as time barred at this time. *See Callen*, 2021 WL 4523436, at *5 (holding similarly); *Amin*, 301 F. Supp. 3d at 1291–92 (same).

The Defendants also ask the Court to dismiss the IUDTPA claim "because that statute only allows for injunctive relief." (Br. in Supp. of Defs.' Mot. to Dismiss, at 35.) As with before, the Plaintiffs have established a likelihood of future harm and can seek injunctive relief under the IUDTPA.

### 5. Texas (Count XII)

The Texas Deceptive Trade Practices Act (TDTPA) provides a cause of action against "false, misleading, or deceptive act[s]" and "unconscionable action[s]." Tex. Bus. & Com. Code § 17.50(a)(1), (3). An "unconscionable action or course of action" is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). A "grossly unfair" degree is "glaringly noticeable, flagrant, complete and unmitigated." *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)).

36

The Defendants contend that Plaintiff Garza pleads "merely 'unfair' conduct" and not "grossly unfair" conduct. (Br. in Supp. of Defs.' Mot. to Dismiss, at 36 (quoting Am. Compl. ¶ 400).) They seek dismissal for failure to plead an "unconscionable action" as a result. (*Id.* at 35–36.) The Plaintiffs respond that their allegations do amount to unconscionable action, even if the language of the Amended Complaint uses the term "unfair." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 34 (citing Am. Compl. ¶¶ 395–406).) Nonetheless, they argue their claim should not be dismissed because they have at least adequately pleaded "false, misleading, or deceptive acts," which provides a cause of action independent of the "unconscionable action" standard. (*Id.* at 33–34.)

The Court ultimately declines to dismiss the Texas statutory claim. The Plaintiffs' allegations do not amount to "unconscionable action" by way of "*grossly* unfair" practices—a high standard. *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 687 (N.D. Tex. 2006) ("It is not enough to allege that a defendant 'simply . . . took unfair advantage' of the consumer." (alteration in original) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985))). But they do sufficiently describe "false, misleading, or deceptive act[s]" that give rise to a cause of action under the TDTPA, including the failure to disclose information to induce consumers to buy goods they otherwise would not buy. Tex. Bus. & Com. Code § 17.46(b). Thus, the Court need not dismiss this claim.

### 6.  South Carolina (Counts XVII–XVIII)

The Defendants seek to dismiss the Plaintiff Wright's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") for failure to establish that the Defendants' actions "adversely affect[ ]" the "public interest" and because SCUTPA prohibits suits in a representative capacity. (Br. in Supp. of Defs.' Mot. to Dismiss, at 38.) And the Defendants seek dismissal of Plaintiff Wright's claim under the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act") for improper venue. (*Id.*) The Court discusses these three arguments in turn.

First, the Court finds that the Plaintiffs have adequately pleaded an adverse impact on the public interest under SCUTPA. The Plaintiffs have alleged that the Defendants have concealed the trim defect over multiple years and for multiple vehicle models, as explained above. This type of repetition is sufficient for the Court to conclude that the Defendants' actions have adversely affected the public interest and have the capacity to continue doing so in the future. (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 37–38 (citing *Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 450–51 (D.S.C. 2018)).)

Second, the Court dismisses the SCUTPA claim as it applies to putative class members. The Defendants are correct that SCUTPA prohibits plaintiffs from asserting a claim in a representative capacity such as with the present

38

class action suit. *See* S.C. Code § 39-5-140(a). The Plaintiffs respond that this prohibition does not apply because it is preempted by federal law allowing plaintiffs to bring class actions pursuant to Rule 23. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 38.) However, multiple district courts have rejected the Plaintiffs' exact argument, finding that SCUTPA's specific prohibitions on class actions are substantive state law. *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("[T]he prohibitions against class actions ingrained in the very text of the SCUTPA . . . are substantive portions of South Carolina law and are not trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove* [559 U.S. 393 (2010)] decision." (quotation marks and citation omitted) (alteration in original)); *Burgos v. Am. Honda Motor Co.*, 2024 WL 2108843, at *5 (C.D. Cal. May 7, 2024) ("Multiple courts have . . . held that class action limitations like those here are so intertwined with the statute's rights and remedies that they are substantive law and not procedural rules preempted by Rule 23 under the *Erie* doctrine." (citation omitted)); *see also In re Dealer Mgmt., Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 989–90 (N.D. Ill. 2023) ("[M]any courts have indeed 'distinguished between "pan-statutory" class-action bars,' like the one at issue in *Shady Grove*, and 'limitations built into particular state statutes,' like the one at issue here."). The Court finds the same here and holds that SCUTPA is not preempted by federal law. Therefore, while Plaintiff Wright's individual claim under SCUTPA survives, any

putative class claims under SCUTPA fail.

Third, the Court denies dismissal of the Dealers Act claim. The Dealers Act provides that, "[i]n an action brought pursuant to this article, venue is in the state courts of South Carolina." S.C. Code § 56-15-140. The Defendants rely on this provision to seek dismissal for improper venue. The Plaintiffs rebut this argument by asserting that federal rules regarding venue preempt this state law restriction. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 39). The Court agrees with the Plaintiffs. Proper venue is a matter of federal procedural law, not state substantive law. *See Steward Org., Inc. v Ricoh Corp.*, 810 F.2d 1066, 1068–69 (11th Cir. 1987) (per curiam), *aff'd and remanded on other grounds*, 487 U.S. 22 (1988); *see also Accurate Controls, Inc. v. Cerro Gordo Cnty. Br. of Supervisors*, 627 F. Supp. 2d 976, 986 (N.D. Iowa 2009) (quoting *Popp v. Archbell*, 203 F.2d 287, 288–90 (4th Cir. 1953) ("[V]arious courts have rejected the notion that a state venue statue laying venue for certain actions only in a certain county, or even a state statute granting state courts exclusive jurisdiction over certain actions, could deprive a federal court of diversity subject matter jurisdiction that would otherwise be proper."). As such, the Act's venue restrictions do not deprive this Court of the ability to hear Plaintiff Wright's claim, as venue is otherwise proper. The Court does not find the Defendants' single case on this venue question persuasive since it did not discuss the *Erie* issue nor provide other analysis. *See Browning v. Am. Honda*

40

*Motor Co.*, 549 F. Supp. 3d 996, 1013–14 (N.D. Cal. 2021).

## IV.    Conclusion

For the reasons set forth above, Defendants Mercedes Benz Group AG and Mercedes Benz USA, LLC's Motion to Dismiss [Doc. 53] is GRANTED in part and DENIED in part. The Motion is granted as to Count I (breach of express warranty; Count II (breach of implied warranty); Count IV (violation of the Magnuson-Moss Warranty Act); Count V (unjust enrichment) with respect to all Plaintiffs except Plaintiff David Oblon; Count XIV (violation of the New Jersey Consumer Fraud Act); Count XVI (violation of the Florida Deceptive and Unfair Trade Practices Act); and Count XVII (violation of the South Carolina Unfair Trade Practices Act) with respect to the putative class claims but not as to Plaintiff Keneshia Wright). The Motion is denied as to all other relief requested therein.

SO ORDERED, this ___30th___ day of July, 2025.


THOMAS W. THRASH, JR.
United States District Judge

41